## State, ex rel. Benham, *v.* Bradt.

[No. 21,148.   Filed May 26, 1908.]

1. SCHOOLS.—*Licenses.—Certificate of State Normal School.*—The certificate of proficiency issued by the Indiana State Normal School to post-graduates does not constitute a license entitling such graduates to teach in the common schools.   p. 483.
2. SAME. — *County Superintendents. — Eligibility. — State Normal Certificates.*—A holder merely of a certificate of proficiency from the State Normal School is not eligible to the office of county superintendent.   pp. 486, 487.
3. SAME.—*Licenses.—Effect.—Evidence.*—A license, in the absence of fraud, is conclusive evidence of the holder's qualifications to teach, and no extrinsic evidence can supply its place.   p. 486.
4. SAME.—*Licenses.—Need of.*—Although a person's qualifications may be ample, he is not entitled to teach in the common schools, unless he is duly licensed to do so.   p. 487.
5. QUO WARRANTO.—*County Superintendents.—Eligibility.*—In a *quo warranto* proceeding, it is incumbent upon the relator claiming to be the duly elected county superintendent to prove his own title, the weakness of his adversary's title being immaterial.   p. 487.

From Ripley Circuit Court; *Isaac Carter*, Special Judge.

Action by the State of Indiana, on the relation of John S. Benham, against Hale Bradt. From a judgment for defendant, plaintiff appeals. *Affirmed.*

*Connelley & Klein,* for appellant.

*John O. Cravens, Ralph Bamberger* and *Isidore Feibleman,* for appellee.

JORDAN, J.—This is a proceeding in *quo warranto* commenced in the lower court in the name of the State of Indiana, on the relation of John S. Benham, to eject appellee from the office of county superintendent of Ripley

county, and to have the relator awarded the right to the possession of that office. Appellee demurred to the complaint for insufficiency of facts. This demurrer, over the objections and exceptions of the relator, was sustained, and, electing to abide by the ruling of the court upon the demurrer, judgment was rendered against him. The only error assigned is the sustaining of the demurrer to the complaint. The latter, among others, disclosed the following facts: On June 3, 1907, the same being the first Monday of that month, the several township trustees of Ripley county, Indiana, convened pursuant to law at the office of the county auditor at 11 o'clock a. m., for the purpose of electing a county superintendent, that being the proper time for the election of said official. The trustees, after organizing, proceeded to the election of such officer. They voted *viva voce*, instead of by ballot, as prescribed by §6376 Burns 1908, Acts 1899, p. 240, §1. The relator received a majority of all the votes cast by this method, and was declared duly elected county superintendent for a term of four years. After his election he qualified by taking the official oath and by executing and filing with, and to the approval of, the county auditor his official bond, as required by statute. Prior to June 3, 1907, the relator had been for more than one year, and still is, an inhabitant and an elector of Ripley county, Indiana.

In order further to show the eligibility of the relator, the complaint alleges: ''That on said date of his election as aforesaid, and ever since then, the relator was and has been the owner of a life license to teach in any of the schools of the State of Indiana, as required by an act entitled: 'An act concerning county superintendents, their qualifications, their compensations, and their assistants,' approved March 7, 1905 [Acts 1905, p. 492], which life license so held and owned by the relator at the time of his said election had been issued to the relator by the Board of Trustees of the

Indiana State Normal School, and is in words and figures as follows, to wit:

'Indiana State Normal School.

This certifies that John S. Benham, after having completed the course of instruction in this institution, has presented satisfactory evidence of having taught in the common schools two years, and having the ability to instruct and manage a school. This diploma therefore is conferred upon him, by the authority of the board of trustees, and the laws of the State of Indiana, which diploma shall be considered sufficient evidence of qualifications to teach in any of the schools of the State.

Indiana State Normal School, Terre Haute, Indiana.
June 28, 1895.' "

This document is also signed by the members of the faculty of the normal school. On June 18, 1907, the relator, after qualifying, demanded of the defendant (appellee herein), the then incumbent of said office, the possession thereof, together with all the books, moneys, papers, etc., pertaining and belonging thereto. This demand was refused. The prayer of the petition is that the relator be awarded damages, that the defendant be ousted from said office, and that the relator have possession thereof, together with all the books, papers, moneys, etc., and for all other and proper relief.

Two questions upon the facts alleged in the complaint are presented for our decision: (1) Was the relator, at the date of his alleged election, eligible to be elected to and to hold the office of county superintendent? (2) Was the election in controversy invalid by reason of the fact that the trustees voted *viva voce*, instead of by ballot, as prescribed by the statute? Section one of an act concerning county superintendents, their qualifications, etc., approved March 7, 1905 (Acts 1905, p. 492, §6378 Burns 1908), declares: "That no person shall be eligible to, or shall hold the office of, county superintendent unless he hold at the time of his election a thirty-six-months' state license, a sixty-months'

license, a life or professional license, to teach in the common schools of this State; but nothing herein contained shall affect the title to his office of any county superintendent now in office."

Provisions similar to the ones just given were first enacted by the legislature in 1899 (Acts 1899, p. 240, §3, §5902 Burns 1901).

Counsel for appellant argue that the diploma granted by the Board of Trustees of the Indiana State Normal School and held by the relator at and prior to the time of his election is a sufficient license within the meaning and requirement of §6378, *supra.* Therefore they contend that at the date of the election the relator was eligible to hold the office of county superintendent of Ripley county. Opposing counsel controvert this claim and insist that the diploma in question, granted by the trustees of the school under §6701 Burns 1901, §4557 R. S. 1881, is not a license to teach in the public schools, but is only, as declared by the express language of the statute, to be considered as "sufficient evidence of qualification to teach in any of the schools of this State." Section 6701, *supra,* is section two of the act of March 5, 1873 (Acts 1873, p. 199). This latter act amended and added supplemental sections to the original act creating the Indiana State Normal School. Section 6701, *supra,* reads as follows: "The board of trustees is authorized to grant, from time to time, certificates of proficiency to such teachers as shall have completed any of the prescribed courses of study, and whose moral character and disciplinary relations to the school shall be satisfactory. At the expiration of two years after graduation, satisfactory evidence of professional ability to instruct and manage a school having been received, they shall be entitled to diplomas appropriate to such professional degrees as the trustees shall confer upon them; which diplomas shall be considered sufficient evidence of qualification to teach in any of the schools of this State."

Section 6378, *supra*, declares in positive language that no person shall be eligible to the office of county superintendent unless at the time of his election he holds one of the four documents therein mentioned, viz.: "A thirty-six-months' state license, a sixty-months' license, a life or professional license, to teach in the common schools of this State." By these provisions, before a person is eligible to hold the office of county superintendent, it is an essential and indispensable requirement that at the time of his election he holds at least one of the four prescribed documents, each of which is denominated "a license." Turning to the statute providing for the issuing of these several licenses, we find that a thirty-six-months' state license and a sixty-months' license is each authorized to be issued to an applicant by the State Superintendent of Public Instruction, under §6389 Burns 1908, Acts 1899, p. 488, §1. A professional license is authorized by §6388 Burns 1908, Acts 1899, p. 240, §7. This section provides "that any person now possessing a thirty-six-months' license, whose next consecutive license shall be for a term of thirty-six months, or any person who shall hereafter receive two licenses in succession, each of thirty-six months, may receive, at the expiration of such several licenses, a license for the term of eight years upon such an examination held by the county superintendent as may be prescribed by the State Board of Education, and such license shall issue only upon the approval of the State Board of Education, and shall be styled a professional license, and shall entitle the holder to teach in any of the schools of this State."

Section 6311 Burns 1908, Acts 1865, p. 3, §155, authorizes the granting by the State Board of Education of state certificates, each of which is considered a "life license." This section in part reads as follows: "Said board [*i. e.* State Board of Education] may grant state certificates of qualification to such teachers as may, upon a thorough and critical examination, be found to possess eminent scholarship

and professional ability, and shall furnish satisfactory evidence of good moral character. They shall hold stated meetings, at which they shall examine all applicants, and those found to possess the qualifications herein above named shall receive such certificate, signed by the president of the board, and impressed with the seal thereof; and the said certificate shall entitle the holder to teach in any of the schools of the State without further examination, and shall also be valid during the lifetime of said holder, unless revoked by said board.''

By section 153 of the act of 1865, *supra* (§4420 R. S. 1881), the State Board of Education was created. This latter section, as amended in 1875 and 1899, constitutes §5849 Burns 1901, Acts 1899, p. 426.

It may be asserted that a ''life license,'' as authorized under §6311, *supra*, to be granted by the State Board of Education, may be regarded as of the highest rank of any of the school licenses authorized to be granted to a teacher. Counsel for appellant argue that the State Board of Education is not the only authority from which a ''life license'' to teach in the public schools may emanate. They insist that a person holding a diploma granted by the Board of Trustees of the Indiana State Normal School under §6701, *supra,* must be regarded within the meaning of the provisions of §6378, *supra,* as a holder of a ''life license'' permitting him to teach in the common schools of this State. This view of the law is certainly untenable. While it is true that the object or purpose of the Indiana State Normal School is better to equip or qualify persons to teach in our public schools, still there is no tenable ground for contending that the legislature, by §6701, *supra,* —which section as we have shown forms a part of the statute creating the Indiana State Normal School—in any sense contemplated or intended that the diploma therein provided to be granted by that institution to its postgraduates of two

years' standing should serve or in any manner be considered as a license authorizing the holder thereof to teach in the common schools of this State. It will be observed that the section in question does not declare that such diploma shall be considered as a license, but the plain provision, as therein contained, is: ''Which diplomas shall be considered sufficient evidence of qualification to teach in any of the schools of this State.'' While possibly such diploma might be considered by the proper officer or board, invested by law with the power to grant or issue a license to an applicant, sufficient evidence, without further examination of the qualification of the holder thereof, to warrant the issuing to him of a license to teach in the public schools of this State, still in no sense could the diploma alone be the equivalent itself of such license. It certainly is not the evidence of a person's qualifications to teach which will render him eligible to be elected county superintendent, but

2. he must be the holder of the actual license; or, in other words, he must hold the written document or license issued by the particular officer or board designated by the statute as empowered to issue such license. Clearly the word ''license,'' as employed in §6378, *supra,* means the written document by which permission or authority has been granted to the holder thereof to teach in the common schools for the period of time required by that act. *Elmore* v. *Overton* (1886), 104 Ind. 548, 54 Am. Rep. 343.

Such a document, in the absence of fraud affecting it, is conclusive evidence that the person to whom it is issued has the legal requirements or qualifications of a teacher.

3. No evidence, *aliunde,* can be received to supply its place. *Jackson School Tp.* v. *Farlow* (1881), 75 Ind. 118; *Commonwealth* v. *Inhabitants, etc.* (1819), 16 Mass. 141; *Union School Dist.* v. *Sterricker* (1877), 86 Ill. 595.

Under the laws of this State no person can be employed or permitted to teach in our common schools in the absence of

his holding some grade of license required or provided for by the statute, although his learning and qualifications as a teacher be conceded. *Jackson School Tp.* v. *Farlow, supra.*

And no person, unless he holds at the date of his election at least one of the licenses mentioned in §6378, *supra,* is eligible to be elected to the office of county superintendent. This is true, although he may hold a postgraduate diploma granted by the Board of Trustees of the Indiana State Normal School, or hold a diploma granted by the Indiana State University, or by any other of the higher institutions of learning in this or other states. No such diploma will respond to the requirements of §6378, *supra,* or serve to supply the place of the license thereby exacted. In regard to this requirement of the latter act, it may be asserted *"ita lex scripta est"* and must be so enforced by the courts. It was incumbent on the relator, in order to maintain this action, to show in his complaint, and to prove upon the trial, that under the law he was eligible to be elected to the office in controversy, and he must recover, if at all, upon the strength of his own title to the office. He cannot prevail upon any infirmity or weakness in the title of appellee. *Relender* v. *State, ex rel.* (1898), 149 Ind. 283.

As the complaint does not show that the relator at the time of his alleged election held some one of the licenses required by §6378, *supra,* but held only the diploma therein set out, he must be held to have failed to establish his eligibility to be elected to and hold the office of county superintendent. Therefore, for this reason alone, the ruling of the court in sustaining the demurrer to the complaint was right.

Judgment affirmed.