## SANDY v. BOARD OF COMMISSIONERS OF THE COUNTY OF MORGAN.

[No. 21,344. Filed February 18, 1909.]

1. CORONERS.—*Inquests.—Autopsies.—Authority for.*—Under §9439 Burns 1908, §5879 R. S. 1881, autopsies may be legally held only where a legal inquest is held—in cases where death is supposed to have resulted from violence or casualty. p. 676.
2. SAME.—*Inquests.—Arbiter of.*—Coroners, being ministerial officers, are not the sole judges of when inquests should be held, but they must act only in cases where death reasonably appears to have been caused by violence or casualty. p. 676.
3. NOTICE.—*Officers.—Coroners.—Powers.*—Coroners are chargeable with notice of the statutory limitations upon their powers. p. 677.
4. ESTOPPEL.—*Unauthorized Acts of Public Officers.*—No estoppel can grow out of the unauthorized acts of public officers. p. 677.
5. CORONERS.—*Inquests.—Autopsies.*—Where a child was at home and regularly attended by physicians and there was no suspicion of death from casualty or violence, a coroner's inquest, and therefore an autopsy, could not legally be held, although the exact cause of the death was not known, inquests and autopsies being authorized solely as an aid in the administration of the criminal law. p. 677.
6. APPEAL.—*Weighing Evidence.*—The Supreme Court will not weigh conflicting evidence. p. 678.

From Morgan Circuit Court; *Joseph W. Williams*, Judge.

Action by William J. Sandy against the Board of Commissioners of the County of Morgan. From a judgment for defendant, plaintiff appeals. Transferred from Appellate Court (see 42 Ind. App. 268) under §1391 Burns 1908, Acts 1901, p. 565, §8.. *Affirmed.*

*N. A. Whitaker*, for appellant.
*S. C. Kivett*, for appellee.

MYERS, J.—This appeal is prosecuted under §1391 Burns 1908, Acts 1901, p. 565, §8, as one in which the proper construction of a statute or statutes is claimed to be involved.

Appellant instituted this action in the Morgan Circuit Court, after a disallowance of his claim by the board of commissioners, upon a *quantum meruit* for $25 in holding an autopsy on the body of a child upon the order, and under the direction, of the coroner of Morgan county. Appellee answered: (1) By general denial; (2) that the child at the time of, and for days before, its death was under the care of physicians, and its death was not sudden or unexpected, and it was not supposed to have come to its death by violence or casualty; (3) that at the time of the death of the child appellant was one of the attending physicians and had the child under his immediate care; that its death was not supposed to have been caused by violence or casualty, but from diphtheria; that no crime was supposed to have been committed, and that the autopsy was not held for the purpose of investigating or discovering whether a crime had been committed, but for the purpose of settling a controversy between appellant and another attending physician as to the nature of the disease from which the child died, and was without authority of law; (4) that it was not supposed that the child had come to its death by violence or casualty, and there was no reasonable ground to suppose that it had. Appellant unsuccessfully demurred to the affirmative answers. There

was a reply in general denial to the three affirmative answers, a trial, finding, and a judgment for appellee.

Appellant assigns as errors the rulings on the demurrers to the answers, and the overruling of his motion for a new trial. Under the rule in *Stults* v. *Board etc.* (1907), 168 Ind. 539, each of the answers was good. The statute itself (§9439 Burns 1908, §5879 R. S. 1881) confines the cases in which autopsies may be legally held to cases where inquests are legally held, and it restricts the right, or obligation, to cases where death is supposed to have come by violence or casualty. And while the statute ought not to be so strictly construed as to defeat its purpose, yet it must still be remembered that it is not to be extended beyond its evident purpose, and that a coroner is not the sole arbiter of the necessity, for if this were so a broad field would be opened for mere conjecture as to the cause of death in any case where medical science may be baffled, and there would remain no such statutory direction or authority as we have, but a general power to direct autopsies without any opportunity for review by the courts. The action of a coroner would foreclose the question, and we have seen that he has no such power. Being a ministerial power, it must be exercised within some reasonable presumption that the death has resulted from violence or casualty. It cannot be justified in the interest of science, for no such authority is given except to prescribed persons, and there are distinct rights as to the dead. Otherwise the sacred dead might be the subjects of the surgeon's knife in any case in which the coroner might see fit, and at the expense of the public.

His authority must be reasonably, and not arbitrarily, exercised. Being in the exercise of a wholly ministerial duty, acting under purely statutory authority, which is in itself the interpreter and measurer of his powers, appellant was charged with notice of his limitations; for, if this were not so, a coroner might by indirec-

tion do what he could not do directly, and the rule is well settled that no estoppel can grow out of the unau-

4. thorized acts of a public officer of limited authority. *Hord* v. *State* (1907), 167 Ind. 622; *Lee* v. *York School Tp.* (1904), 163 Ind. 339; *Moss* v. *Sugar Ridge Tp.* (1903), 161 Ind. 417; Throop, Public Officers, §551; *Daily* v. *Board, etc.* (1905), 165 Ind. 99; *Board, etc., v. Van Cleave* (1898), 19 Ind. App. 643.

The rule is not changed by the fact that coroners are by statute given the power to direct autopsies. The power itself is limited to the specified conditions which in-

5. voke it, and the conditions are open to review by the courts. A reasonable supposition that a death occurs from violence, or casualty, is as necessary to confer jurisdiction to hold an inquest, or an autopsy, as that the body be found in his county. The evidence in this case shows that the child had been visited by appellant on Saturday morning without a discovery of the malady with which it was afflicted, diphtheria of the larynx, a disease difficult of diagnosis; that the child had been in and out of the house during most of the day preceding, and died suddenly early Sunday morning, after having taken a drink of cold water, which it arose from its bed and crossed the room to obtain; that it had been under the constant attention of its parents, both of whom were present at the time of its death, and there was not the slightest suspicion of death from casualty or violence; on the other hand, a physician who was called immediately after death, at once suspected death from the true cause, from the symptoms and attending circumstances. It was simply a case of death from a natural cause, somewhat difficult of diagnosis. Appellant seeks to justify the claim, as a legal one, on the ground, that physicians are required to report to the secretary of the board of health all deaths and the causes thereof; that no undertaker shall bury a human body without a certificate of a physician as to the cause of death; and that appellant refused to give

a certificate of the cause of death, because he did not know the cause, and hence the coroner was justified in holding an autopsy in order that a death certificate might issue. It might quite as seriously, and with as much reason, be insisted in any case of baffled medical science that an autopsy must be held in order that a death certificate might issue. The statute with respect to restrictions of funerals in case of death from contagious disease is also relied on, and must be read in the light of the purpose of its enactment. The statute with respect to inquests and autopsies has from the earliest times been an arm of the criminal law, both to punish those guilty, and protect those who are innocent, of crime. *Jameson* v. *Board, etc.* (1878), 64 Ind. 524.

The other statutes as to the certification of causes of death, etc., are for statistical purposes and health regulations, and being in the interest of the public health, are purely police regulations.

If there were nothing here but the fact of the autopsy's being ordered, we would be bound to presume that it was under a proper case for it; but the evidence is here

6. upon which the court below acted. And with the requirement that the coroner in order to justify an autopsy must have a reasonable suspicion of violence or casualty, the question became one of the weight of the evidence, and since there was evidence to support the court's finding, we cannot disturb the judgment on that ground.

The judgment is affirmed.

Jordan, C. J., did not participate in the decision of this cause.