ILLINOIS PIPE LINE COMPANY *v.* FITZPATRICK.

[No. 26,424.   Filed February 12, 1934.   Rehearing denied
June 26, 1934.]

*Estal G. Bielby, Charles Matson, Abram Simmons,* and *V. M. Simmons,* for appellant.

*Charles A. Lowe,* for appellee.

FANSLER, J.—Appellee moved to dismiss this appeal upon the ground that the record does not properly show the approval of the surety upon the appeal bond.

It appears that on December 15, 1930, in term, the trial court overruled appellant's motion for a new trial, and rendered the judgment from which this appeal is taken. Appellant at the time prayed, and was granted, an appeal. Thirty days were given in which to file an

appeal bond in the sum of $650.00, and The National Surety Company of New York was suggested and approved, as surety. The record as made up by the clerk as of the day of the judgment, shows all of the proceedings, including the approval of the bond and the surety, except that a blank is left for the name of the surety. The record continued in this condition, without the name of the surety appearing, until and including the dates of the filing of the record in this court and appellee's motion to dismiss, and until changed by adding the name by a *nunc pro tunc* entry as will appear hereafter. But it appears that in making the transcript of the record for use in this court on appeal, one of the representatives of the clerk of the court below, who evidently was acquainted with the name of the surety that had been approved, inserted the name in the transcript, and the transcript as filed here did not correspond with the record as it was below in the respect pointed out, notwithstanding the transcript filed here was certified as correct by the clerk.

As an incident to its motion to dismiss the appeal, appellee filed a petition for a writ of *certiorari,* for the purpose of bringing up the true record with the name of the surety blank. Pending hearing on appellee's motion for *certiorari,* the appellant filed its motion in the court below, asking the court to correct its record by an entry *nunc pro tunc,* inserting the name of the surety in the blank left in the record as shown by the order book. Service was had, and a hearing on the motion for a *nunc pro tunc* entry was held on September 17, 1931. It appears from the evidence taken at that hearing, which has been properly brought here, that on the day the judgment was entered and the appeal prayed, appellant presented to the court a form of order, with blanks for the time to be allowed for filing, the name

of the surety, and the amount of the bond. That after the court had fixed the amount of the bond and given thirty days for filing the same, appellant suggested the name of The National Surety Company of New York as surety, and the court then approved said company as surety, and stated that the record would be made up accordingly. It was shown that the record was made up accordingly in all respects, except that the clerk neglected to insert the name "The National Surety Company of New York." Upon this undisputed evidence, the court ordered the entry changed *nunc pro tunc* by inserting the words "National Surety Company of New York," which was accordingly done.

Appellee's motion to dismiss is upon the theory that the true record does not show the approval of the surety on the appeal bond, and that the order of the court amending the record *nunc pro tunc* is invalid for the reason that it is not supported by sufficient evidence to justify the amendment.

It is generally said in our decisions that a record may not be amended or changed *nunc pro tunc* after the term at which it was made, upon parol evidence alone, but that there must be some written record, memoranda, memorial, or note as a basis for the amendment. It is generally recognized that parol evidence is competent, but only in connection with written evidence.

We have searched our decisions in vain for an application of the rule in which parol evidence was held admissible. In the case of *Brownlee* v. *Board of Commissioners of Grant County* (1885), 101 Ind. 401, it is said that evidence other than the record is admissible to show a mistake in a judgment involving the omission of names. The statement that the amendment may not be made upon parol evidence alone necessarily implies that it can be made upon parol evidence supplemented by something

else. If nothing substantial is to be permitted to rest upon parol, the parol feature of the rule is useless, as it is if every missing essential thing must be proved by a writing.

The decisions of this court, construed in the light of learned and respected authority, may be properly interpreted as establishing the rule that where the record fails to show that a judgment was rendered, order made, or that action was taken, the fact that such action was taken can only be established *nunc pro tunc* after the term by evidence consisting of some written memorial or record, but that when the fact that a judgment was rendered, or some other action taken, is so established, parol proof may be resorted to for the purpose of showing the character, terms, and conditions of the action taken. Black on Judgments, 2 Ed., §135; Freeman on Judgments, 5 Ed., §§127-129.

The evidence, of whatever character, should be clear and convincing, but when it is within the above rule, and satisfactory to the trial court, the amendment may be made, and the action of the court in so doing will not be disturbed on appeal.

In this case the record shows an order approving a surety. That much is established by the record, and parol proof was properly resorted to for the purpose of establishing a detail, the name of the surety. The important thing already appears by the record. Appellant had prayed an appeal; the amount of its bond and the time for filing it had been fixed; and the surety had been approved. If the name of the surety, which the undisputed parol evidence shows was approved in open court, in the presence of appellee's attorney, cannot be supplied by that undisputed parol evidence, it is hard to conceive of any substantial or necessary part of a record being so established. We think the evidence was sufficient.

Appellee's motion to dismiss is overruled.

Appellee's action is based upon a contract by the terms of which, in consideration of $8.50, appellant is granted a right of way to lay, maintain, and operate a pipe line and telegraph or telephone lines across a twenty-six-acre tract of land belonging to appellee. There is a provision for paying damages to crops, with which we are not concerned, and a further provision that "It is further understood and agreed that in the event that the fertility of the soil adjacent to the line of pipe is damaged or impaired by reason of traffic thereon during the construction of pipe line then any said damages are to be paid for by The Illinois Pipe Line Company as may be mutually agreed upon."

The complaint alleges, and the evidence shows, that appellant entered upon appellee's land with a large number of men and heavy machinery, dug a trench entirely across the land, and turned up barren and unproductive earth, which was scattered over a considerable area adjoining the trench; that, in addition, unproductive earth was brought in from a tunnel under an adjoining railroad track which, together with debris, was scattered over a quarter acre of land; that heavily loaded vehicles were driven over the land in muddy weather, cutting the land axle-deep over a large area, thus churning up the soil, and that the fertility of the land was thus permanently impaired. There was a trial by jury, and a verdict for $500.00.

The only error assigned relates to the overruling of appellant's motion for a new trial.

Appellant contends that, having acquired and paid for the right to construct and maintain its pipe line over appellee's land, it had the right to do everything necessary to accomplish that purpose, and in so doing it had a right to use sufficient right of way for the purpose

contemplated without further obligation, and that it is not liable for any damage to the fertility of the land necessarily used in the operation of its machinery and equipment over the land for the purpose of digging its trench. It also contends that "The correct measure of damages, under the issues as formed in this case, was the difference between the fair cash rental value of that part of the real estate of which the fertility of the soil adjacent to the line of pipe was damaged or impaired, by reason of traffic thereon, during the construction of the pipe line before and after the pipe line was constructed, beginning at the time the pipe line was constructed and up to the filing of the complaint." And that "It was only for damage to the fertility of the soil adjacent to the right of way for which the appellant agreed to pay damages to the appellee. The burden of proof was, therefore, upon the appellee to show the amount of land which was actually damaged, in accordance with the terms of the contract, outside of the right of way necessarily granted by the contract, and the evidence admitted should have been as to the rental value of the land contemplated by the contract which had been actually damaged, and should not have included any other part or portion of the twenty-six acres. The damages, of course, could not be recovered beyond the date of the filing of the complaint."

The clause of the contract above quoted may be reasonably interpreted to mean that, if the soil adjacent to the pipe line is impaired or destroyed insofar as its productiveness is concerned, appellant shall pay such damages as will compensate appellee therefor. It is conceivable that the pipe line might be laid and covered up, and the productivity of the soil immediately above it and over the line be uninjured, and, therefore, it is fair to assume that if it was not so done, and the actual soil above the pipe line destroyed,

the damage to it should be deemed to be included. Such a construction does not limit recovery to the value of the actual square rods of land destroyed, but would reasonably permit of the recovery of any diminution in value in the tract of which the injured land is a part if the entire tract can be reasonably said to be affected in its value by the destruction of the injured land.

The trial court so interpreted the contract, and admitted evidence, and instructed the jury, accordingly. It appears that the contract was prepared by appellant, and, under the familiar rule, doubts and ambiguities must be resolved in favor of appellee. We cannot say that the trial court's interpretation of the contract is unreasonable or unjustified. Witnesses were permitted to testify to the specific injury to the land; that the injury affected the usefulness of the entire twenty-six acres. Witnesses who qualified themselves as experts testified to both the sale value and rental value of the land before and after the injury, and that the land was permanently injured. Under this testimony it would have been improper for the court to have advised the jury that they must limit the damage to that accruing between the construction of the pipe line and the beginning of the action, since permanent injury means permanent damage. The theory upon which the case was tried was the correct one. Upon that theory there was no error in the admission or rejection of evidence or in the giving or refusal to give instructions. Under the evidence the verdict of $500.00 cannot be said to be unreasonable or excessive.

Judgment affirmed.