## DEPARTMENT OF INSURANCE ET AL. *v.* CHURCH MEMBERS RELIEF ASSOCIATION

[No. 27,372.   Filed April 2, 1940.]

*Omer S. Jackson,* Attorney General, and *Joseph W. Hutchinson,* Deputy Attorney General for appellants.

*Edwin E. Thompson* and *Johnson, Zechiel & Johnson,* all of Indianapolis, for appellee.

FANSLER, J.—The appellee, as plaintiff, brought this action alleging that the defendants, who are appellants, were interfering with the plaintiff in the writing of certain insurance contracts. An injunction was sought and the action involves an interpretation of the statute governing the character of policies which might be issued by the plaintiff and a determination of the legality of the policies in question. There were special findings of fact and conclusions of law, and a judgment sustaining the plaintiff's right to issue the policies.

Error is assigned upon the conclusions of law and upon the overruling of the motion for a new trial.

The appellee was organized under chapter 195 of the Acts of 1897 (Acts 1897, p. 318, §§ 39-421 to 39-446, Burns' 1933, §§ 9780 to 9805, Baldwin's 1934), which provides for the organization of assessment companies.

The appellants contend that the act does not authorize, but forbids, the issuance of policies with provisions for fixed extended insurance, fixed paid-up insurance, fixed loan value, or a fixed cash-surrender value.

The trial court concluded, first, that the defendants are estopped to deny the plaintiff's right to issue the contracts; second, that, by a practical construction of the statutes by the parties, the legal right of the plaintiff to issue the policies has become a fixed right; and, third, that the appellee has the right to issue the policies under the statute.

That the court was in error in its first and second conclusions cannot be doubted. When the right to do a thing depends upon legislative authority, and the Legislature has failed to authorize it, or has forbidden it, no amount of acquiescence, or consent, or approval of the doing of it by a ministerial officer, can create a right to do the thing which is unauthorized or forbidden. The administrative officers of the state, as well as the appellee, were bound by the statute. The insurance department had no power to authorize or acquiesce in the issuance of policies unauthorized or forbidden by the statute. An estoppel against the state cannot arise out of the unauthorized acts of state officers. *Platter* v. *Board of Com'rs* (1885), 103 Ind. 360, 381, 2 N. E. 544, 556, 557; *Sandy* v. *Board of Com'rs* (1909), 171 Ind. 674, 677, 87 N. E. 131, 132; *Ness* v. *Board of Com'rs, etc., et al.* (1912), 178 Ind. 221, 232, 98 N. E. 33, 1002; 21 C. J. § 193, p. 1191; 19 American Jurisprudence, § 166, p. 818.

A so-called practical construction, which apparently means a departmental construction, of a statute is not binding or conclusive upon the state or upon the court. Such a construction may be looked to and considered by the court in construing and

interpreting an ambiguous statute, but it cannot in any manner affect the operation or construction of a nonambiguous statute. *Hord* v. *State* (1907), 167 Ind. 622, 641, 79 N. E. 916, 922; *Shutt* v. *State ex rel. Cain* (1910), 173 Ind. 689, 691, 89 N. E. 6; *State* v. *Mutual Life Insurance Co.* (1910), 175 Ind. 59, 79, 93 N. E. 213, 221; *Metropolitan Life Insurance Co.* v. *State of Indiana* (1917), 186 Ind. 407, 410, 116 N. E. 579, 580.

The sole question therefore is whether the statute, under which the appellee was authorized to engage in the insurance business, forbids the inclusion of the provisions complained of in the appellee's policies. It is clear that the appellee is operating upon the assessment plan. All of the policies specify the amount of annual or quarterly premiums, but there is a provision for the payment of "subsequent amounts required under this policy," and another for the collection of additional amounts of premium to maintain. legal reserves for the payment of obligations. If the terms, "fixed paid-up insurance" and "fixed extended insurance," are construed as meaning only that the time or period for which the policy is to run is fixed, there seems to be no statutory reason why policies with such provisions may not be issued by the appellee. The policies provide, in effect, that the first premium will insure for a period of one year, the second premium for a period of one year, and the third premium for a period of one year plus an additional fixed period; that, if the first four premiums named shall be paid, the policy will insure for not only the fourth year, but an additional and longer fixed period, and so on. Section 4 of the statute (§ 39-424, Burns' 1933, § 9783, Baldwin's 1934), provides that the trustees, directors, or managers shall fix the rates and amounts of premiums,

assessments, or periodical calls, and the time and manner of payment, and the risks to be assumed by the company, "and the duration thereof." In other words, there is nothing in the act that requires that the premium payments shall be for protection for a period of one year and no more. It is therefore within the power of the appellee to fix the time for which the insurance will run or be extended upon the payment of one or any other number of premiums. But the term, "paid-up insurance," standing alone, might be construed as an agreement that, upon the payment of the sum named as annual premium, the insured would be entitled to protection for the term fixed without any obligation to pay any additional sum under any circumstances. The statute cannot be reasonably construed as permitting such an agreement. It is contrary to the very nature of insurance upon the assessment plan. The appellee in preparing its policies seems to have recognized the necessity of a provision for the collection of amounts, in addition to the premium named, in the event of impairment of the reserves required by the statute. The extended insurance provision can be justified upon the ground that, when three or more premiums have been paid, the accumulating premiums buy insurance for a longer and extended period, but, if so, the provision for the payment of additional amounts must be treated as affecting the extended period just as it affects one-year periods under the first and second premium payments. In other words, the policy runs to the full time provided for in the extended insurance table, and the right to collect additional amounts as premium continues during the full extended life of the policy.

But the provisions for a fixed loan value upon the sole security of the policy, or a fixed cash-surrender

value, or a so-called endowment provision, which call for maturity of the policy and a payment of a fixed sum to the insured, present another question. Section 7 of the act, (§ 39-429, Burns' 1933, § 9788, Baldwin's 1934), provides: "That nothing contained in this act shall be construed to permit any contract promising any fixed cash payment to any living certificate or policy holder, excepting in the contingency of physical disability." There is nothing ambiguous or uncertain in this. An agreement to pay a given amount of cash upon surrender of the policy, or to pay a fixed amount by way of loan upon the sole security of the policy, which amounts to the same thing in effect, is in clear and unmistakable conflict with this provision of the statute. In all of the policies exhibited the cash value and the loan value are identical. The only difference is that in the case of a loan the right is reserved to continue the policy in effect and repay the money, but the choice is with the insured, and the amount of the cash or loan value is his upon demand. Legal reserve companies are permitted under the statute to contract concerning matters not within the strict limits of life and accident insurance. In such cases premiums are based not only upon insurance costs, but are accumulated upon a basis that will build up an investment value for the insured as in endowment and limited payment policies. It is out of the sums thus paid in excess of strictly insurance costs that cash values and surrender values and maturity values are accumulated, and, when such a policy is surrendered before maturity, the cash that is paid the policyholder is simply the proportion of his investment, with interest that has accrued at the time of surrender. But it is clear that the act under which the appellee is operating does not contemplate the making of con-

tracts or the incurring of liability for the payment of anything except strictly insurance losses, that is, death claims and physical disability claims.

The appellee relies upon the case of *Federal Life Insurance Co.* v. *Arnold* (1910), 46 Ind. App. 114, 124, 90 N. E. 493, 91 N. E. 357, 359, as supporting all of its contentions. The case does support the view that contracts for extended insurance are authorized by the statute. The controversy there was between a beneficiary of a policy and an Illinois company that had taken over the assets of an assessment plan company organized under the statute here in question. It is noted that in the concluding paragraph, on page 125, the court finally plants itself upon the ground that the company, having received the full consideration, should not be permitted to avoid the contract. It is said in the opinion that the contract there under consideration provided for fixed annual premiums, and that the statute contemplates "the power of the board to raise such a fund as will give to its policies a withdrawal value." The policy under consideration here does not provide for a fixed, in the sense that it is limited, annual premium. As we construe the statute, it does not permit of such an agreement, nor does it permit of the policy having a withdrawal value. It expressly prohibits it. But these statements were not necessary to a decision of the Arnold case. The only parts of the statute discussed were those which the court construed as dealing with the liability of the assured. The provision above quoted, prohibiting a contract promising fixed cash payments, was not noticed or referred to. A right result was reached, but, in looking to the case as authority, consideration should be given to the relationship of the parties to the action,

and the meaning of the language used should be carefully limited to the question presented.

Judgment reversed, with instructions to restate the conclusions of law in conformity with this opinion, and to enter judgment for the plaintiff enjoining interference with the issuing of contracts providing for extended insurance and denying any further injunctive relief.

NOTE.—Reported in 26 N. E. (2d) 51, 128 A. L. R. 635.