STATE EX REL. BLAIR V. GETTINGER, TRUSTEE, ET AL.

[No. 28,829. Filed April 15, 1952. Rehearing denied May 21, 1952.]

590

*Bell & Bell; Ellis H. Bell* and *Harold J. Bell,* all of Indianapolis, for appellant.

*Russell E. Wise,* of Union City; *Robert L. Smith; Keith Fraser;* and *John A. Resler* (of counsel), all of Portland, for appellees.

DRAPER, J.—The parties signed a contract whereby the appellees employed the appellant to teach grades one and two in a school of appellee Jackson School Township in Randolph County; Indiana, during the school year 1948-1949. She completed that year and upon being refused employment for the succeeding year, she brought this action to mandate the appellees to reinstate her to her former position on the same terms and for the same wages she received in the school year 1948-1949, and for payment of her salary for the succeeding year.

From an adverse decision she appeals, asserting that the decision of the court is contrary to law.

The evidence most favorable to the appellees discloses that the appellee trustee entered into negotiations with the appellant to engage her services as a teacher for grades one and two in said school. The trustee told appellant the regular teacher for grades one and two would be gone for a year, and he had only one year's employment to offer her, and he asked her if she were licensed to teach grades one and two. She informed him that she was so licensed. The trustee told appellant the position paid $2400 per year, but he would pay her $2500 since the position was to be for one year only. Thereupon a printed contract in the usual form was signed by the parties.

About two weeks after the opening of school the appellant brought to the trustee the teacher's license which she held and same was approved by the superintendent. The appellant taught the school year of 1948-1949. On the last day of that school year the appellant inquired whether the teacher whose place she had taken was returning for the following school year, and the trustee answered in the affirmative. The trustee informed appellant that the township paid its

regular teachers in ten monthly installments, but since she was not returning he would pay the entire balance due her at that time, which he did. The evidence would further indicate that the appellant understood she was not returning for the following year and attempted to make other arrangements for a different school and that she never turned in her teacher's reports as required by law for the 1948-1949 school term. The appellees offered testimony designed to establish appellant's incompetence to teach the first and second grades, but such evidence was rejected.

As above stated, the contract was in usual form, without special provisions of any kind. The appellant alleged, and on the record before us it must be taken as true, that she neither resigned in writing, received another contract, nor was timely notified in writing that her contract would not be renewed for the succeeding year, in the absence of either of which a valid contract of the kind under consideration must be deemed to continue in force for the succeeding year under the provisions of Burns' 1948 Replacement, §28-4321.

The appellees assert, however, that the appellant had no license to teach the first and second grades in the 1948-1949 school year, although she represented to the appellees that she was so licensed and so induced the signing of the contract. That assertion raises the first and perhaps the most important question in the case.

The appellant could not lawfully be employed to teach the first and second grades if she did not hold a license of the kind and grade required for that position. Burns' 1948 Replacement, §28-4208; Opinions Atty. Gen'l. of Indiana, 1933, p. 199. The township could not be bound by a contract not authorized by law. *Honey Creek School Township* v. *Barnes et al.*

(1889), 119 Ind. 213, 21 N. E. 747. Such an attempted contract would be void, *Putnam* v. *The School Town of Irvington* (1879), 69 Ind. 80; *The City of Indianapolis* v. *Wann, Receiver* (1896), 144 Ind. 175, 42 N. E. 901, 31 L. R. A. 743, and could not support a recovery, *Jackson School Township* v. *Farlow* (1881), 75 Ind. 118. Whether or not the appellant was licensed to teach the first and second grades in the school year 1948-1949 must be determined by the application of the law to all of the evidence in the case, regardless of which party adduced it.

On September 9, 1925, there was issued to the appellant:

"ELEMENTARY LICENSE, FIRST GRADE
INTERMEDIATE AND GRAMMAR
GRADES

valid for employment in the public schools of Indiana for the corresponding kind of school work described on the reverse side of this license."

On the reverse side appeared, among other material, the following:

"Intermediate and Grammar Grades

|  | Date | Valid Until |
|---|---|---|
| "1st Grade Inter-Grammer license renewed | 4/17/34 | 7/24/35 |
| 1st. gr. Elementary license renewed | 9/30/35 | 7/24/40 |
| 1st grade elementary license renewed | 9/17/41 | 7/24/45 |
| 1st grade elementary license renewed | 1/16/46 | 7/24/50" |

The reverse side also bears the notation of various renewals of the license, the last of which indicates that

the license was renewed and valid from 7/25/45 until 7/24/50. It bears the further notation:

"Elementary License.

"Kindergarten License, 'good in the kindergarten and first grade of any elementary school.'

"Primary License, 'good for teaching in the first, second, third and fourth grades of any elementary school.'

"Intermediate License, 'good for teaching in the fourth, fifth, sixth, seventh and eighth grades of any elementary school.'

"Grammer Grade License, 'good for teaching in the fourth, fifth, sixth, seventh, and eighth grades of any elementary school and first grade in the seventh and eighth grades of any junior high school.'

". . . ."

The license held by the appellant was originally issued pursuant to and in accordance with Acts 1923, ch. 11, §9, being Burns' 1948 Replacement, §28-4209. Subd. 8a thereof provides for kindergarten and first grade licenses. Subd. 8b, under the heading "Primary teachers license" provides for licenses to teach the first to fourth grades, both inclusive, of any elementary school. Other portions of Subd. 8 follow:

". . . .

"c. Intermediate grade teacher's license:

"(1) Intermediate grade teacher's license, first grade, valid for five (5) years, renewable thereafter for life on presentation of evidence of successful experience and professional spirit, and good for teaching in the fourth, fifth, sixth, seventh, and eighth grades of any elementary school. An intermediate grade teacher's license, first grade, may be issued to persons who have completed a two-year standard or approved normal school course, and who have specialized in fourth, fifth, and sixth grade teaching.

". . . .

"d. Grammar grade teacher's license:

"(1) Grammar grade teacher's license, first grade, valid for five (5) years, renewable thereafter for life on presentation of' evidence of successful experience and professional spirit, and good for teaching in the fourth, fifth, sixth, seventh, and eighth grades of any elementary school, and in seventh and eighth grades of any junior high school. A grammar grade teacher's license, first grade, may be issued to persons who have completed a two-year standard or approved normal school course, and who have specialized in seventh and eighth grade teaching."

From the foregoing it would appear that the appellant's license to teach, when issued, was an Intermediate and Grammar grades license which entitled her to teach the 4th to 8th grades, both inclusive, in any elementary school, and the 7th and 8th grades of any junior high school. Her license to teach, when issued, did not entitle her to teach the first and second grades, and if she were so entitled when she contracted with the appellees, it must be because of something which intervened after the issuance of the license in 1925.

By §1 of Ch. 11 of the Acts of 1923, being Burns' 1948 Replacement, §28-4201, the authority to grant licenses to teachers was vested in the state board of education, and by §4, being §28-4204, it was provided that:

"All details not provided for in this act connected with the licensing of regular public school employees (the requirements as to academic and professional preparation for each kind and grade of license issued, the conversion of one kind of license into another kind, . . . the issuing of licenses on credentials, the exchange and renewal of licenses, . . . the kind and grade of license for given positions, . . .) shall be determined, on the

recommendation of the state superintendent, by the state board of education."

By Ch. 330 of the Acts of 1945, Burns' 1948 Replacement §28-405, et seq., the Indiana state board of education was created, and the state board of education theretofore in general charge of the schools of the state was thereby terminated. It was provided that the board should be divided into three commissions, one of which is the commission on teacher training and licensing. All powers and duties of the predecessor state board of education were transferred, distributed and assigned to the board and commissions created by the Act.

Sec. 4 of the Act, Burns' 1948 Replacement, §28-408, reads as follows:

"The commission on teacher training and licensing shall exercise all the powers and duties heretofore exercised by the state board of education with reference to examination, training, and licensing of persons desiring to teach in the elementary and secondary schools of the State, and the supervision and inspection of teacher training institutions, and the appointive members shall include a minimum of four (4) persons actively employed in the schools of Indiana.

". . . .

"The Commission . . . shall cooperate with the accrediting agencies in the improvement of teacher training and the attracting of candidates thereto, and shall fix standards of competence which in its best judgment should be attained by such candidates for teacher training and licensing and by the training institutions and shall measure such attainment by appropriate means.

"The commission shall have the power to fix standards for license to teach such new subjects of study or to perform such duties in connection with school administration as shall from time to time

become necessary as a result of developments in science, aviation, business, and the social life of the people of the state and shall have the power to evaluate work experience and military service in terms of higher education and experience equivalency."

Chapter 120 of the Acts of 1945, Burns' 1951 Replacement, §60-1501, et seq., provides a uniform method of making, promulgating, filing and publishing rules by all state agencies. Appellant takes the position that she had a valid license for teaching grades one through eight in the school year 1948-1949 by reason of a rule of the commission on teacher training and licensing passed on August 27, 1946, and found in Indiana Rules and Regulations, 1947, Vol. I, p. 790, revised 1949, pp. 262, 263[1]. The rule is printed in the margin.[2]

---

[1] The power and authority of the commission on teacher training and licensing is not in issue in this appeal.

[2] "COMMISSION ON TEACHER TRAINING
AND LICENSING

"Rules Numbered 14-32

"Pursuant to due publication of notice and public hearing required by the provisions of Chapter 120 of the Acts of the General Assembly of Indiana 1945, the Commission on Teacher Training and Licensing of the State Board of Education at its special meeting held at Room 227, State Department of Public Instruction, State House, Indianapolis, Indiana, on August 27, 1946, at 10 a.m. at which a quorum of members was present, unanimously adopted the following rules—14-32. Said rules are to be in full force and effect for all applicants for any and all types and grades of certificates required for the public schools of Indiana who shall have matriculated in any standard of accredited teacher training institution on or after September 1, 1946. Applicants who shall have matriculated in any standard or accredited teacher training institution prior to September 1, 1946, may qualify for any type of certificate that was authorized by the

The part of rule 14 (Vol. I, p. 791) relied upon by appellant reads as follows:

"Elementary School Certificates

"The following first grade elementary school certificates valid for five years shall be issued after November 1, 1945. (Lower elementary and upper elementary licenses issued since July 1, 1940, will not be issued after July 1, 1946).

"General Elementary Teachers Certificate

"Valid for teaching all subjects in grade one to eight inclusive. . . .".

---

State Board of Education and/or Commission on Teacher Training and Licensing at the date of such matriculation. ,

"Rule 14 (Revised)

"Elementary School Certificates

"That the Elementary School Certificates of the following types be authorized effective for students who matriculate and enter training in any standard or accredited teacher training institution on and after September 1, 1946.

"a. General Elementary Teachers Certificate shall be issued to any applicant who has completed an approved four year curriculum in a teacher training institution accredited by the Commission on Teacher Training and Licensing. This certificate shall be valid for teaching ninth grade of any Junior High School in any special area in which the applicant has 18 semester hours or 24 quarter hours of college credit or in any restricted area as required for secondary certificates. (See Rule 17 'Exhibit C'). This certificate shall be valid also for teaching in kindergarten when kindergarten education is taken as a special area.

"b. General Elementary Teachers Certificate for Special Area of Work Related to Elementary Education shall be issued to any applicant who has completed the program of subjects required for the General Elementary Certificate. An applicant may be certified to teach in a special area when he has completed 18 semester hours or 24 quarter hours of approved work in that area. A table of approved areas for specialization with recommended program of courses has been adopted by the Commission on Teacher Training and Licensing as published in Chapter VII, pages 1-5 of the Revised Bulletin 148, of the Department of Public Instruction for the State of Indiana. This table is appended hereto and de-

The preamble to rules 14-32 provides however, after reciting the adoption and publication of those rules, that:

"Said rules are to be in full force and effect for all applicants for any and all types and grades of certificates required for the public schools of Indiana *who shall have matriculated in any standard of accredited teacher training institution on or after September 1, 1946.* Applicants who shall have matriculated in any standard or accredited teacher training institution prior to September 1, 1946, may qualify for any type of certificate that was

signed as 'Exhibit D', which table is hereby adopted by the Commission on Teacher Training and Licensing.
"Certificates for Teachers in Elementary Schools

"The four-year education curriculum for teachers in elementary schools, leading to a bachelor's degree, became fully effective July 1, 1940. The regulation was in no way retroactive and did not invalidate certificates issued previous to July 1, 1940.

"The curriculum and the rules and regulations governing certificates for teachers in elementary schools were further simplified and clarified April 23, 1945. Teacher education institutions will therefore need to organize their curricula to carry out as nearly as possible the general principles governing the curricula and the certificates as set forth in the following pages. Any devitation from the curricula leading to the various certificates should be submitted to the Commission on Teacher Certification for approval.

"Elementary School Certificates

"The following first grade elementary school certificate valid for five years, shall be issued after November 1, 1945. (Lower elementary and upper elementary licenses issued since July 1, 1940, will not be issued after July 1, 1946).
"General Elementary Teachers' Certificate

"*Valid for teaching all subjects in grades one to eight inclusive.* Also valid for teaching in grade nine in a Junior High School in a special area in which the teacher has eighteen semester hours or twenty-eight quarter hours of college credit or in any restricted area as required for secondary certificates. Valid for teaching in kindergarten when kindergarten education is taken as a special area.
". . . . . ".

authorized by the State Board of Education and/or Commission on Teacher Training and Licensing at the date of such matriculation." (emphasis supplied)

Rule 14 provides at the outset:

"That the Elementary School Certificates of the *following types* be authorized effective for students *who matriculate and enter training in any standard or accredited teacher training institution on and after September 1, 1946.*" (emphasis supplied)

It is quite apparent that Rule 14 as adopted on August 27, 1946, has to do only with those teachers who matriculated on or after September 1, 1946, and who have the qualifications therein prescribed.[3] The appellant does not come within this classification. We can find nothing in the rules which would authorize the issuance of a "General Elementary Teachers Certificate" entitling the appellant to teach the first and second grades. In fact, the appellant's license was never renewed as a *"General* Elementary Teachers Certificate." It might also be noted in passing that the renewal of license upon which appellant relies was made on January 16, 1946, whereas the rule in question was not adopted until August 27, 1946. The appellant admits in her brief that the rule and regulation above referred to was not retroactive as to licenses issued prior thereto. In this we agree, for it is clearly stated in Acts 1945, ch. 120, §5; Burns' 1951 Replacement, §60-1505, which provides for the adoption and publication of rules, that "No such rule *shall be effective* until after compliance with the provisions of this Act . . ." (emphasis supplied)

---

[3] No change in this respect is found in the 1949 additions and revisions of the Rules.

Evidence was admitted which was designed to show that a license such as that held by the appellant had been construed by certain public officials to be valid for teaching grades one and two. At the April 28, 1950, meeting of the teacher training and licensing commission the minutes show (Appellant's Exhibit 4) that:

"The question was raised as to whether the Division might continue the practice of accepting any elementary license as valid for teaching in grades one through eight. Dr. Maxam moved that such an interpretation be accepted indefinitely as a policy of the Commission. Mr. Morehead seconded the motion, and it was carried."

At the December 12, 1947, meeting the following resolution was offered: (Appellant's Exhibit 5):

"RESOLVED, That any Indiana elementary license held by a teacher with seventy-two or more weeks of elementary training shall be construed as qualifying such person to teach in the elementary grades for school year of 1948-49."

At the February 17-18, 1949, meeting the minutes show (Appellant's Exhibit 6):

"It was taken by consent that Mrs. Mina Ebbert be informed that an elementary certificate will be acceptable anywhere in the elementary field during the school year 1949-1950."

The secretary of the commission testified that it had been the policy and practice of the commission to allow teachers with elementary licenses all over the state to teach in the first and second grades at elementary schools; that the interpretation is that they have the right to teach in all the elementary grades on a *general* elementary certificate; that appellant's license would come within that interpretation and policy.

Exhibit 4 indicates that the board had been accepting any elementary licenses as valid for teaching in grades one through eight as a matter of "practice." It would appear from the exhibit that doubts concerning the "practice" existed in the minds of the commissioners, and such interpretation was accepted as a policy of the commission only in April 1950. Exhibit 5 is shown to have been offered, but is not shown to have been adopted. It seems of little value as evidence. Whatever inference might arise out of the fact that the resolution was offered but not adopted would appear to be unfavorable to the appellant. In Exhibit 6 the meaning of "anywhere in the elementary field" is not clear, at least to this court. These minutes were adopted some months after the signing of the contract in question, but it does appear from these minutes that special action was deemed necessary to solve Mrs. Ebbert's problem in connection with her elementary certificate, whatever that problem may have been. There is no testimony whatever on the part of the secretary of the commission concerning the length of time that the policy or practice, concerning which he testified, had been in effect.

Cases are cited which point out the influential effect of a long continued practical construction of contracts and statutes. If the meaning of a rule is doubtful, the administrative interpretation of it will have much weight unless it is plainly erroneous or inconsistent with the rule itself, *Bowles* v. *Seminole Rock & Sand Co.* (1944), 325 U. S. 410, 89 L. Ed. 1700, 65 S. Ct. 1215, but rights created or benefits conferred by an administrative rule should not be extended by interpretation beyond the plain terms of the rule itself, 42 Am. Jur., Public Administrative Law, §101, p. 431. To do so would be to create rules by interpretation,

thus defeating the legislative requirement that rules may be adopted only by compliance with required formalities such as publication of notice and a hearing and the approval of the attorney general and governor as required by Ch. 120 of the Acts of 1945. Moreover, where, as here, the meaning of the rule is not doubtful, or the language technical, we need not look to the administrative construction of it. *Brown & Sons Lumber Co.* v. *Louisville & N. R. Co.* (1936), 299 U. S. 393, 81 L. Ed. 301, 57 S. Ct. 265; *Department of Ins.* v. *Church Members Relief Assn.* (1940), 217 Ind. 58, 26 N. E. 2d 51, 128 A. L. R. 635; *Bowles* v. *Dairymen's League Co-op. Ass'n.* (1945), 61 F. Supp. 358. We can find no justification for an interpretation of Rule 14 which would authorize the issuance of a license to appellant to teach grades one and two in the 1948-1949 school year.

The appellant asserts that, even though the license was not a valid one, the appellees were estopped to raise objections on that ground by reason of continuing the employment of appellant after discovery of the fact. An illegal public contract cannot be ratified and made binding by conduct of public officials in excess of their statutory authority. *Union School Township* v. *First National Bank of Crawfordsville* (1885), 102 Ind. 464, 2 N. E. 194; *Platter* v. *The Board of Commissioners of Elkhart County* (1885), 103 Ind. 360, 381, 2 N. E. 544; *The City of Indianapolis* v. *Wann, Receiver, supra; Sandy* v. *Board, etc.* (1909), 171 Ind. 674, 87 N. E. 131; *Department of Ins.* v. *Church Members Relief Assn., supra.* In *School Town of Milltown* v. *Adams* (1946), 116 Ind. App. 527, 65 N. E. 2d 635, relied upon by appellant, the contract between the teacher and the

school board was a legal and binding contract when made and it was enforceable as such.

The appellant says the administrative school officials have the exclusive right and power to make assignment of teachers to particular grades and subjects, ■ and since the appellant did have a license which clearly entitled her to teach grades four to eight, which were taught in appellees' school, she should have been assigned during the following school year to one of those grades. No authorities are cited to sustain that proposition and we know of none. The contract here was for a definite fixed term. It was for one school year and no more. The appellant taught that year and was paid in full for her services. We know of no law or principle of law or equity applicable to the facts in this case that would require the appellees to employ and pay her for another year unless they were required to do so by the provisions of Burns' 1948 Replacement, §28-4321, *supra*. As above said, we think the provisions of that section contemplate the existence of a valid contract, and only valid contracts are renewable under its provisions.

Judgment affirmed.

Gilkison, C. J., dissents.

## DISSENTING OPINION

GILKISON, C. J.—I am unable to agree with the majority opinion, for the following reasons:

I think the teacher's contract in question is, in every particular, a legal contract. It is the uniform standard contract prepared by the administrative and legal experts of the state of Indiana, and is the product of many years of experience, of many scores of legislative sessions, of the legal staffs of many governors, and the

best efforts of fifty or more attorneys general and their numerous deputies and assistants. These and similar teacher's contracts have been before the court in innumerable cases during the past one hundred years and always heretofore they have been held legal and enforceable.

Appellant's connection with this contract was limited to signing her name to it after it had been fully prepared by appellees, and was presented to her by appellees, solely for her signature, agreeable with §§28-4303, 28-4304, Burns' 1948 Replacement. It is the universal rule that if there is any ambiguity or uncertainty or illegality in such a contract, such ambiguity, uncertainty or illegality must be construed against the party so making and presenting the contract. *Jenkins* v. *King* (1946), 224 Ind. 164, 175, 65 N. E. 2d 121; *Illinois Pipe Line Co.* v. *Fitzpatrick* (1934), 207 Ind. 1, 8, 188 N. E. 771; 17 C. J. S., Contracts, §324, p. 751, 755; 12 Am. Jur., Contracts, §252, p. 795; Am. L. Institute Restatement, Contracts, Vol. 1, §236, Cl. d, p. 330. When such a contract is so prepared, presented and signed it is inconceivable that any uncertainty, ambiguity or illegality in the contract can be construed against the party so signing it and because thereof he may be denied his legal rights after he has fully performed his services and covenants under the contract. Except in the majority opinion, I am unable to find a case in which the rules of construction have been so transposed and applied. It has been well said that:

> "In the construction of a contract the court must bear in mind the situation of the parties, the subject-matter of the contract and the intention and purposes of the parties in making it, and should carry that intention into effect so far as the rules of language and the rules of law will permit. 2 Parsons, Contr. 7th Ed. 631. All parts of the contract will be so construed as to give force

and validity to all of them, and to all of the language used, where that is possible. Id. 636. Comparatively unimportant parts or provisions, which may be severed from the contract without impairing its effect or changing its character, will be suppressed or subordinated, if in that way, and only in that way, the contract can be sustained and enforced. Id. 637."

*Rhoades* v. *Chesapeake & Ohio Railway Co.* (1901), 49 W. Va. 494, 39 S. E. 209, 55 L. R. A. 170, 87 Am. St. Rep. 826; 12 Am. Jur., Contracts, §251, pp. 793, 795.

To me it is wholly inconsistent to permit the assumption that the contract in question was sufficiently legal to bind the appellant to teach for the full school year 1948-1949 for the appellees, and to justify appellee in paying appellant for her services for the full school year, from the school funds allotted to the appellees to pay its teachers, including the appellant as one of the teachers therein, but is not sufficiently legal to give appellant the expressed privileges granted to all teachers under §28-4321, Burns' 1948 Replacement, providing:

". . . . Contracts wherein a township school corporation is a party shall be deemed to continue in force for the succeeding school year on the same terms and for the same wages plus any increases as provided by the provisions of chapter 101 of the Acts of 1907 and acts amendatory thereof, known as the Teachers' Minimum Wage Law, unless on or before the day during which the teacher has completed his customary reports regarding the promotion of pupils and has filed a copy of same at the office of the township trustee, but in no case later than five [5] days after the expiration of the school term the teacher shall be notified by the school corporation in writing delivered in person or mailed to him or her at last and usual known address by registered mail that such contract will not be renewed for such succeeding year or

unless such teacher shall deliver or mail by registered mail to such trustee his or her written resignation as such teacher or unless such contract is superseded by another contract between the parties."

I am wholly unable to understand how it is possible to have degrees of legality and illegality. If such is possible, some definite rules should be established defining these degrees. It should not be left to the unpredictable exercise of discretion by the courts. To so leave it is to say it is a matter for arbitrary action. If it is impossible to define the several degrees of legality, the reason must be because they do not exist.

As noted in the majority opinion, there was some talk between appellant and defendant trustee prior to executing the written contract. But since under the law these are all merged in the written contract, their presence in the opinion is unexplainable. The talk between the parties on the last day of the school year and the so-called understanding of appellant are likewise meaningless in the opinion unless it is intended thereby to indicate that these talks and understandings in some way have influenced the opinion. This I refuse to believe.

The opinion quite correctly states, ". . . the contract was in the usual form, without special provisions of any kind. The appellant alleged, and on the record before us it must be taken as true, that she neither resigned in writing, received another contract, nor was timely notified in writing that her contract would not be renewed for the succeeding year, in the absence of either of which a valid contract of the kind under consideration must be deemed to continue in force for the succeeding year under the provisions of Burns' 1948 Replacement, §28-4321."

But it is contended that at the time of contracting appellant did not hold a valid and subsisting license to teach in the grade schools of Indiana. The license she held is sufficiently described in the opinion. Licensing of school-teacher is vested in the state board of education, through the state superintendent. §§28-4201, 28-4202, 28-4208, Burns' 1948 Replacement. A properly executed license, in the absence of fraud affecting it, is conclusive evidence that the person to whom it is issued has the legal qualifications of a teacher. *State ex rel. Benham* v. *Bradt* (1908), 170 Ind. 480, 84 N. E. 1084.

It was the duty of the appellee trustee to know that appellant held a proper license and that it was registered with the proper superintendent when he employed her. I think the record sufficiently shows that she had such a license properly registered and the opinion so states. On the back of this license among other things, it is stated that her first grade elementary license was renewed "1-16-46" which I think means on January 16, 1946; and that this renewal made it valid until 7-24-50, which I think means until July 24, 1950. Thus it is shown that her license was good for teaching in the elementary grades, from one to four, during the entire period covered by the contract in question, and following until July 24, 1950.

For some reason, not shown in the evidence, the license did not come to the trustee until appellant had taught two weeks. Apparently the trustee and the superintendent, with whom the license was recorded, approved the license and believed it authorized appellant to teach the primary grades one and two, and she was so assigned by these authorities. No one connected with the schools from the state superintendent of public instruction down to the township trustee,

and the superintendent or principal of the school in question ever questioned the license until this action was brought, months after the close of the 1948-1949 term of school. If there was any material defect in the license it was the duty of the school officials to detect, and correct it at the time of employment or as soon thereafter as possible. If it was not in all things correct, it could, and no doubt would have been corrected, even by permit if necessary under §48-4204 Burns' 1948 Replacement, so that no question could arise concerning it. After an act has been performed the law will presume that to have been done which should have been done to authorize the act. *Kain* v. *Rinker* (1890), 1 Ind. App. 86, 91, 27 N. E. 328; *Gilchrist* v. *Hatch* (1914), 183 Ind. 371, 375 to 378, 106 N. E. 694; *State, ex rel. Hitchcock et al.* v. *Farris et al.* (1925), 197 Ind. 128, 133, 150 N. E. 18.

As indicated in the opinion, in order to detect any defect or error in the license it is necessary to wade deviously through a veritable maze of administrative rules and from them rather arbitrarily detect something, that escaped the attention of all the school authorities including the appellees, and also the appellant, which it is claimed makes the contract void. This discovery comes too late and its penalty falls unilaterally, wholly upon the only innocent party to the contract.

I am unable to follow this plan. I think the judgment should be reversed.

NOTE.—Reported in 105 N. E. 2d 161.