Mr. Justice Frantz
dissenting:
I am compelled by the explicit language of the School District’s own rule to dissent from the reasoning of my brethren and from the decision based thereon.
The majority opinion asserts that “the clear intendment of the rule is that no mother may teach in the public school system of District No. Six while she has a child less than one year old.” This is not borne out by its plain language. The promulgated rule regarding *168 maternity leave, underscored but apparently signifying nothing to the majority, speaks of “the child born of the pregnancy . . .” What pregnancy? Obviously, one that occurs during employment and which thus requires, depending upon the circumstances, the taking of a “leave of absence or the termination of employment [to] begin no later than the fifth month of pregnancy.”
The hard and inescapable fact is that the regulation does not cover Mrs. Boatright’s situation, i.e., having a child under one year of age born of a pregnancy not occurring during employment by the School District. And because this is a matter of contract, the court should not insert and enforce restrictions not mutually agreed to by the parties, even though this process may establish an expedient policy for the School District.
There may be instances in which some small gap exists between what a rule or regulation may have been meant to say and what it actually does say. In these instances language yields to obvious intent and this produces a salutary result. But here the gap is too wide for such harmonizing.
An illustration will serve to define the gulf between the rule written by the School District and the rule as construed by the majority of the court. Suppose a teacher employed by District Six were to adopt a six-months-old child. She in no way could be said to come within the wording of the School District’s rule, never having been pregnant; yet, under the majority view, she would be required to resign or take a leave of absence.
Depending upon how one chooses to view it, the majority has unquestionably written either a new rule for the School District or a new contract for the parties. In connection with contracts this court has often and uniformly held such action impermissible. Kansas City L. Ins. Co. v. Pettit, 99 Colo. 268, 61 P.2d 1027. Neither may the court by interpretation make new rules. State v. Gettinger, 230 Ind. 588, 105 N.E.2d 161.
*169 The majority goes contrary to controlling rules of construction. A contract of adhesion is construed strictly against the writer and liberally in favor of the other party. Standard Oil Co. v. Perkins, 347 F.2d 379; Francis v. Shawnee Mission Rural High School, 161 Kan. 634, 170 P.2d 807.
“ ‘Adhesion contract’ is a handy shorthand descriptive of standard form printed contracts prepared by one party and submitted to the other on a ‘take it or leave it’ basis. The law has recognized there is no true equality of bargaining power in such contracts and has accommodated that reality in construing them. See Kessler, Contracts of Adhesion, 43 Columbia L. Rev. 629 (1943 . . .” Standard Oil Co. v. Perkins, supra.