Gerald Franklin GRIMES, Appellant
(Defendant Below),

v.

STATE of Indiana, Appellee
(Plaintiff Below).

No. 782S277.

Supreme Court of Indiana.

Oct. 4, 1983.

Kenneth R. Watson, Williamsport, for appellant.

Linley E. Pearson, Atty. Gen., Joseph N. Stevenson, Deputy Atty. Gen., Indianapolis, for appellee.

PRENTICE, Justice.

Defendant (Appellant) was convicted, following a jury trial, of Escape, a class D felony, Ind.Code § 35–44–3–5 (Burns 1979), Theft, a class D felony, Ind.Code § 35–43–4–2 (Burns 1979), found to be an Habitual Offender, Ind.Code § 35–50–2–8 (Burns Supp.1983), and sentenced to a total of thirty-four (34) years imprisonment.

In this direct appeal the Defendant raises three (3) issues:

1. Whether the trial court erred in denying Defendant's pre-trial motion for separation of offenses;

2. Whether the trial court erred in allowing a police officer to testify regarding an extrajudicial statement made by the Defendant;

3. Whether sufficient evidence was presented to overcome Defendant's motion for a directed verdict and to sustain the conviction.

The record disclosed that the Defendant was incarcerated in the Warren County Jail on October 8, 1979. The Sheriff, Loran Wilkie, whose apartment was above the jail, was awakened by his wife who had heard noises below, and he went downstairs to make a bed check. He called to the Defendant, who responded, "I am in bed, Pappy." Wilkie opened the door, and the Defendant "parted me." The Sheriff found a hole in the wall of the jail and determined that the Defendant had pulled back a window frame and removed brick from underneath the window. A bucket, a bed brace, and a screw driver were found lying with the bricks under the window. The Defendant was the only person missing, and the Sheriff issued a bulletin regarding his escape.

At approximately 7:00 a.m. on the same day, the Sheriff received a report of the theft of a beige and brown Chevrolet pickup truck. The truck, absent some tools which had been in the back, was later recovered in Cayuga, Indiana.

Around noon on October 8, 1979, a witness who was employed at Clark Chevrolet in Cayuga saw a "buckskin and cream" Chevrolet pick-up truck and a man entering the area where used "trade-ins" were kept. Later, it was learned that a silver and black Maverick automobile had been taken from that area.

Defendant was seen in a silver and black Maverick around 7:00 p.m. on October 8. He was chased by a number of police officers and was apprehended a short time later sitting in a black and silver Maverick in which were found miscellaneous tools, identified as those missing from the Chevrolet truck.

\* \* \* \* \* \*

## ISSUE I

Defendant contends that the trial court should have granted his pre-trial motion for

a separation of offenses for trial. In one Information, Defendant was charged with Escape and with being an Habitual Offender. In a separate Information, he was charged with Theft. On its own motion, the trial court joined the offenses for one trial.

Ind.Code § 35–3.1–1–10(b) (Burns 1979) provides that when a defendant has been charged with two or more offenses in two or more informations which could have been joined in the same information under Ind. Code § 35–3.1–1–9(a)(2), the court, on its own motion, may join the informations for trial, unless to do so would not be in the interest of justice. Ind.Code § 35–3.1–1–9(a)(2) provides that two or more offenses may be joined in the same information, with each offense stated in a separate count, when the offenses "are based on the same conduct or on a series of acts connected together or constituting parts of a single scheme or plan." Ind.Code § 35–3.1–1–11(a) gives a defendant an absolute right to severance of offenses, only if they are joined solely on the ground that they are of the same or similar character. In all other cases severance is granted "whenever the court determines that severance is appropriate to promote a fair determination of the defendant's guilt or innocence of each offense."

Whether charges are severed for trial generally lies within the trial court's sound discretion, and clear error must be demonstrated for this Court to interfere. *Duncan v. State,* (1980) Ind., 409 N.E.2d 597, 599. In making its decision, the court is to take into account "the number of offenses charged, the complexity of the evidence offered, and whether the trier of fact will be able to distinguish the evidence and apply the law intelligently as to each offense." Ind.Code § 35–3.1–1–11(a); *Jameison v. State,* (1978) 268 Ind. 599, 601, 377 N.E.2d 404, 405.

In the case at bar, the charges were not joined for one trial solely on the ground that they were of the same or similar char-

acter. Rather, the charges arose from a single ongoing scheme and were based upon a series of acts that constituted the parts of the scheme. Defendant here escaped from the jail. In furtherance of his escape, he stole a truck and fled the area. That theft was the basis of the theft charge that was joined.

It cannot be said that the evidence in this case was complex or that a fair determination of Defendant's guilt or innocence was hindered when he was tried on both charges in the same trial.

### ISSUE II

Defendant contends that the trial court erred in allowing an extrajudicial statement made by him to be admitted into evidence. He argues that the statement was made without a proper advisement of his rights having been made, as required by *Miranda v. Arizona,* (1966) 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694.

Following a hearing outside the presence of the jury, at which time the trial judge ruled that the statement was admissible, Officer Phil Oliver, a trooper with the Indiana State Police, testified that he had advised the Defendant of his rights on the night he was apprehended and that although the Defendant acted disinterested in what was taking place, he responded, "I know what my rights are; I know what my rights are." One or two days later, while the Defendant was in the Sheriff's office awaiting transport to the Diagnostic Center, Oliver, in the presence of others and in the midst of casual conversation in which the Defendant was participating, asked the Defendant why he had abandoned the truck for a car. Oliver did not read the Defendant his rights again, but said, "You know what your rights are; you don't have to answer it." and told the Defendant that he was merely curious. Defendant responded that he had gotten rid of the truck because it wouldn't run properly after he had put diesel fuel in it and that he needed "wheels" to get away.

Before this statement could properly be admitted into evidence, the State was required to establish, beyond a reasonable doubt, that the *Miranda* warnings were given and that the Defendant voluntarily waived his rights. In determining whether this burden has been met, we look to the totality of the circumstances surrounding the making of the statement to determine whether it was freely given or induced by violence, threats, promises or other improper influence. *Tawney v. State,* (1982) Ind., 439 N.E.2d 582, 586; *Long v. State,* (1981) Ind., 422 N.E.2d 284, 285; *Turner v. State,* (1980) Ind., 407 N.E.2d 235, 237. However, in reviewing the trial court's ruling upon the issue, we will not weigh the evidence but will only determine whether there was substantial probative evidence to support the finding of the trial court. *Rodgers v. State,* (1979) 270 Ind. 372, 374, 385 N.E.2d 1136, 1137; *Ortiz v. State,* (1976) 265 Ind. 549, 553, 356 N.E.2d 1188, 1191. If there was sufficient evidence to support the ruling of the trial court the admission of the statement will not be disturbed by this court. *Turner,* 407 N.E.2d at 235.

 Despite Oliver's incomplete warnings immediately prior to the Defendant's making the inculpatory statement, the evidence supports the trial court's conclusion that he had been adequately advised of his rights and that, nonetheless, he voluntarily made it. It is not disputed that the Defendant was completely advised of his rights at the time of his arrest. Even though Oliver testified that the Defendant's mind was not on the events taking place as he was read his rights, Oliver further testified that the Defendant kept repeating, "I know what my rights are." Having been previously arrested on numerous occasions, Defendant was well acquainted with law enforcement procedures. In addition, a casual conversation was taking place among several of the personnel in the Sheriff's office with whom the Defendant was on a first name basis. Thus, there was no evi-

dence of coercion. Defendant was reminded of his rights and expressly advised that he need not respond, but, nonetheless, he chose to answer. While the better practice is to advise an accused of his constitutional rights at the beginning of each interview, the warnings do not necessarily have to be repeated on each occasion of questioning. *Grey v. State,* (1980) Ind., 404 N.E.2d 1348, 1352.

### ISSUE III

Defendant next asserts that the evidence was insufficient to overcome his motion for a directed verdict or to sustain the conviction. He has presented these questions as three (3) separate issues:

(1) Whether the State at trial met its burden of proof in establishing lawful detention of Defendant at time of alleged escape;

(2) Whether the Court erred in failing to grant the prayer of Defendant for directed verdicts at the close of the State's evidence; and

(3) Whether the Court erred in its ruling on the Defendant's Motion to Correct Errors.

Inasmuch as the Defendant consolidated his arguments on these issues and they all relate to the sufficiency of the evidence, we will here treat them together.

 Defendant claims that the State failed to prove a "lawful detention," one of the requisite elements of an escape. Ind. Code § 35-44-3-5 (Burns 1979). It should first be noted that while the Defendant objected when the Prosecutor asked Sheriff Wilkie whether the Defendant was "in lawful detention" on the ground that the question called for a conclusion, there was no objection to the Sheriff's testimony after the Prosecutor rephrased the question. The Sheriff testified that the Defendant was in jail on October 8, 1979, pursuant to a court order, awaiting a trial in Fountain County and transport to the Diagnostic Center. Wilkie further testified that the Defendant

was being held pursuant to a prior burglary conviction.

In *Page v. State,* (1980) Ind., 410 N.E.2d 1304, 1306–1307, we stated our standard for evaluating the refusal of the trial court to grant a directed verdict:

"In order for the State to avoid a judgment on the evidence, a mere *prima facie* case must be demonstrated. In other words, a judgment on the evidence is appropriate only where there is an absence of evidence upon some essential element or if the evidence is without conflict and is susceptible to but one inference which inference is in favor of the accused." (citations omitted).

It cannot be said that there was an absence of evidence on the element of a "lawful detention" or that the evidence was without conflict with inferences only in favor of the accused. The trial court properly denied Defendant's motion for a directed verdict.

■ With regard to the sufficiency of the evidence to sustain the conviction, the verdict will not be disturbed if the existence of each element of the crime charged may be found from the evidence most favorable to the state and all reasonable inferences to be drawn therefrom. *Loyd v. State,* (1980) Ind., 398 N.E.2d 1260, 1264, *cert. denied,* 449 U.S. 881, 101 S.Ct. 231, 66 L.Ed.2d 105. The state produced substantial evidence of probative value sufficient to establish every material element of escape, and the jury could have reasonably concluded that the Defendant committed this crime.

We find no reversible error. The judgment of the trial court is affirmed.

GIVAN, C.J., and DeBRULER, HUNTER and PIVARNIK, JJ., concur.