Bertram B. EUBANK, Jr., Appellant
(Defendant Below),

v.

STATE of Indiana, Appellee
(Plaintiff Below).

No. 482S159.

Supreme Court of Indiana.

Dec. 16, 1983.

Merrill W. Otterman, Howard County Deputy Public Defender, Kokomo, for appellant.

Linley E. Pearson, Atty. Gen. of Ind., Richard Albert Alford, Deputy Atty. Gen., Indianapolis, for appellee.

PRENTICE, Justice.

Defendant (Appellant) was convicted, following a trial by jury, of Escape, a class C felony, Ind.Code § 35–44–3–5 (Burns 1979), two counts of Kidnapping, a class A felony, Ind.Code § 35–42–3–2 (Burns 1979), Armed Robbery, a class B felony, Ind.Code § 35–42–5–1 (Burns 1979), and Theft, a class D felony, Ind.Code § 35–43–4–2 (Burns 1979), and sentenced to a total of 132 years imprisonment. He had also been charged as an habitual offender, but that charge was dismissed following the return of the verdict upon the other charges.

In this direct appeal he raises six (6) issues:

1. Whether the trial court erred in denying Defendant's motion to order the issuance of subpoenas for several witnesses held in custody;

2. Whether the trial court erred in denying Defendant's motion in limine by which he requested that the State be precluded from inquiring into his past criminal history in the event that he testified in his own behalf;

3. Whether the trial court erred in permitting a witness to testify, over Defendant's objections, to an escape by the Defendant, which occurred subsequent to the offenses being tried;

4. Whether the trial court erred in denying Defendant's motion for severance of offenses for trial;

5. Whether the trial court erred in denying Defendant's motion for a continuance made at the time of sentencing;

6. Whether the imposition of a 132 year sentence violated the Constitution of the State of Indiana or the United States Constitution.

The record disclosed that on September 25, 1979, Patrolman John Henderson of the Madison County Police Department was dispatched to the Michigan City State Prison

to transport the Defendant from the prison to Madison County. Henderson took custody of the Defendant who was restrained by a belly chain with attached handcuffs and leg chains and placed in the front passenger seat of Henderson's patrol car. Enroute to Madison County, the Defendant, free of his restraints, suddenly lunged toward Henderson, grabbed his service revolver, and ordered him to drive down a country road. The Defendant, threatening to shoot Henderson if he did not comply, ordered Henderson to stop the automobile, get out of the car, undress, and walk into a cornfield. Henderson did comply, and the Defendant then drove away in Henderson's squad car.

Subsequently, the Defendant forced Mary Ann Yockey, a high school student who was driving her mother's automobile, to drive her car off the road. Defendant removed several objects from Henderson's squad car, placed them in the car Yockey had been driving, and told her to sit in Henderson's car. She complied, and he drove away in her car. He was later apprehended.

\* \* \* \* \* \*

### ISSUE I

On October 19, 1981, the first day of trial, the Defendant presented a motion for subpoena of twelve witnesses who were inmates of the State Prison. Three of the persons thereby sought had been among ten previously subpoenaed upon Defendant's motion. The court conducted a hearing on the Defendant's second motion and, subsequently, denied it.

Defendant contends that the court's denial of his second motion denied him due process of law. He cites *Washington v. Texas*, (1967) 388 U.S. 14, 87 S.Ct. 1920, 18 L.Ed.2d 1019, to support his right to present a defense: "Just as an accused has a right to confront the prosecution's witnesses for the purpose of challenging their testimony, he has the right to present his own witnesses to establish a defense. This right is a fundamental element of due process of law." *Id.* at 19, 87 S.Ct. at 1923, 18 L.Ed.2d at 1023.

■ We, of course, recognize Defendant's right to present a defense and to have compulsory process for obtaining witnesses; however, the right to compel the attendance of witnesses is not without limitation. *See, e.g., Owens v. State*, (1981) Ind., 427 N.E.2d 880, 882. For instance, federal courts, in applying Fed.R.Crim.P. 17(b) regarding the issuance of subpoenas for named witnesses when the defendant is an indigent, have held that the right to have a subpoena issued is not absolute, that the trial court has wide discretion to determine when a subpoena will be issued, and that an appellate court will not disturb the exercise of discretion unless exceptional circumstances compel it. *U.S. v. Espinoza*, 641 F.2d 153, 159 (4th Cir.1981) *cert. den.* 454 U.S. 841, 102 S.Ct. 153, 70 L.Ed.2d 125 (1981); *U.S. v. Gilliss*, 645 F.2d 1269, 1279 (8th Cir.1981); *U.S. v. Micklus*, 581 F.2d 612, 616 (7th Cir.1978); *U.S. v. Martin*, 567 F.2d 849, 852 (9th Cir.1977). In particular, a trial court need not grant a Rule 17(b) motion if the requested witness would provide only cumulative testimony. *U.S. v. Espinoza*, 641 F.2d 153, 159 (4th Cir.1981); *U.S. v. Gallagher*, 620 F.2d 797, 800 (10th Cir.1980) *cert. den.* 449 U.S. 878, 101 S.Ct. 224, 66 L.Ed.2d 100; *U.S. v. Micklus*, 581 F.2d 612, 616 (7th Cir.1978); *U.S. v. Greene*, 497 F.2d 1068, 1079 (7th Cir.1974) *cert. den.* 420 U.S. 909, 95 S.Ct. 829, 42 L.Ed.2d 839 (1975); *U.S. v. Panczko*, 429 F.2d 683, 688 (7th Cir.1970) *cert. den.* 400 U.S. 946, 91 S.Ct. 253, 27 L.Ed.2d 252 (1970).

■ The Indiana Statute pertaining to subpoena of witnesses held in custody which was in effect at the time of this cause was Ind.Code § 35–1–33–1 (Burns 1979) which provides:

"When it is necessary to procure the testimony of a person imprisoned in any penal facility on the trial of any issue upon an indictment or information, or upon any hearing before a grand jury, the court may order a subpoena to be issued, directed to the custodian of the facility, commanding him to bring the witness named in the subpoena before the court."

The statute first contemplates a showing by the moving party that the testimony is "necessary." We have held that the standard applicable to rulings upon a motion to produce a witness held in a penal institution is whether the Defendant has shown that the testimony of the incarcerated witness is material to the case. *Owens v. State,* (1981) Ind., 427 N.E.2d 880, 882. The statute next provides that the court "may" order a subpoena to be issued. We hold that the ruling on the propriety of a motion for subpoena for an incarcerated witness lies within the sound discretion of the trial court and that his ruling will not be disturbed absent a clear showing of abuse of that discretion.

During the hearing on Defendant's motion, Defendant's counsel first indicated that he was not sure as to what each of the proposed witnesses would testify and that ultimately some or none of them might be of assistance to the defense. Later, by an offer to prove, he stated that some of the proposed witnesses could testify as to Defendant's state of mind, which he claimed was pertinent to his insanity defense, and that some could testify regarding the conditions and environment of the Indiana State Prison and the treatment of the Defendant there, factors which bear upon his mental state. Other witnesses could, Defendant contended, testify that they had seen the Defendant mail money to John Henderson as a bribe to release him from his custody.

The Defendant failed to show that any of the proposed witnesses would provide new and essential testimony. In addition, at the trial, the Defendant called only seven of the ten incarcerated witnesses who had been subpoenaed pursuant to the first motion. One of those witnesses testified that Henderson had previously helped him escape after being paid $1000. He further testified that he was the intermediary who had arranged for Henderson to permit Defendant to escape. His testimony also included observations of prison conditions and the Defendant's mental state. Another witness testified that he had seen the Defendant mail money to someone named "Hendricks of Henderson or something like that." A third witness testified that he mailed money for the Defendant on two separate occasions to "John Henderson." Four other witnesses testified regarding prison conditions, Defendant's treatment in prison, his mental state and various personality changes which they had observed. Other witnesses, who were no longer in custody, also testified regarding prison conditions and Defendant's mental state.

■ We find no error in the court's denial of the second motion to subpoena witnesses held in custody. In denying the Defendant's motion, the trial judge noted that he had honored all prior requests and that this one came in the midst of voir dire examination of the prospective jurors. He further noted that the Defendant had not stated that the proposed witnesses had "some peculiarly new type of testimony that [was] essential." It is apparent that even if the subpoenas had been issued and the anticipated evidence presented, that evidence would have been merely cumulative and that the sum of the evidence, in all probability, would not have produced a different result. The trial court did not abuse its discretion by denying the Defendant's motion; no error or prejudice resulted, and the Defendant's constitutional rights were not infringed.

### ISSUE II

■ The Defendant filed a motion in limine to preclude the State from inquiring into his past criminal record during cross examination, in the event that he should take the witness stand. He further sought to preclude the State from asking any questions referring to his prior convictions or disclosing allegations of prior convictions from the jury, until it had reached a verdict on the principal charges. The motion was overruled and denied. The Defendant did not testify in his own behalf but contends that the denial of his motion in limine impermissibly burdened his right to testify in his own defense and relieved the State of the burden of proving his habitual offender status.

He cites a decision by the Colorado Supreme Court in support of his position but ignores several decisions by this Court, which hold that criminal defendants, who are subject to habitual offender proceedings and who elect to take the stand in their own defense, do run the risk of impeachment through the use of prior convictions. *Williams v. State,* (1981) Ind., 419 N.E.2d 134, 137; *Gilmore v. State,* (1981) Ind., 415 N.E.2d 70, 73; *Griffin v. State,* (1981) Ind., 415 N.E.2d 60, 64; *Jameison v. State,* (1978) 268 Ind. 599, 603, 377 N.E.2d 404, 406–407.

In *Williams,* we wrote:

"[T]he status of habitual offender is not an 'offense' but rather a justification for an enhanced penalty on the charge(s) for which the defendant has been tried and convicted. . . . If the defendant chooses to testify, and the jury acquits him there is no habitual offender phase of the proceedings. If he is convicted, the prosecutor bears the same burden of proving the defendant's habitual offender status as if the defendant had not testified and had not been impeached by his criminal record." *Williams v. State,* 419 N.E.2d at 137.

### ISSUE III

In rebuttal, the State called Herbert Becraft to testify regarding an incident during which the Defendant had escaped from him. The Defendant objected prior to Becraft's testimony, recorded a continuing objection thereto, moved for a mistrial during the testimony, and renewed the mistrial motion at the end of the testimony. All objections and motions were overruled.

Becraft testified that while employed by the Howard County Sheriff's Department on October 16, 1980, more than one year subsequent to the escape episode for which Defendant was standing trial, he took custody of the Defendant at the Indiana State Prison in Michigan City and placed him in a belly chain with handcuffs and leg irons. While enroute to Kokomo, the Defendant managed to free himself from the handcuffs, reached over the seat of the automobile, and take Becraft's gun. The Defend-

ant then ordered Becraft to stop the automobile and remove his other restraints. He then handcuffed Becraft to the back seat and drove to a farmhouse, where he subsequently secured Becraft and a woman to a refrigerator in the kitchen of the home, took money from Becraft, and left in the woman's automobile. Becraft further testified that his conversations with the Defendant on that day had been "chit chat" and that the Defendant had done nothing out of the ordinary prior to his escape.

The Defendant contends that Becraft's testimony was not relevant to the Defendant's sanity on September 25, 1979, and did not tend to prove or disprove any fact in issue. He claims that the testimony was highly prejudicial and that, consequently, he was denied a fair trial.

 The general rule is that evidence of criminal activity, other than that which is charged, is inadmissible on the question of guilt. *Beasley v. State,* (1983) Ind., 452 N.E.2d 982, 984; *Taylor v. State,* (1982) Ind., 438 N.E.2d 294, 297. The general rule, however, has a number of recognized exceptions, one of which obtains when the defendant imposes the defense of insanity, as did the Defendant in the instant case. Great latitude then exists in admitting evidence of other conduct of the defendant, limited to the extent that such conduct must be relevant to the issue of insanity. *Smith v. State,* (1982) Ind., 432 N.E.2d 1363, 1371; *Lock v. State,* (1980) Ind., 403 N.E.2d 1360, 1366; *Holt v. State,* (1978) 178 Ind. App. 432, 434, 382 N.E.2d 1002, 1004. The challenged evidence disclosed conduct almost identical to that for which he claimed no responsibility by reason of diminished mental capacity, and although it occurred approximately one year subsequent to the offense charged, it was relevant, as it evidenced a conscious and intelligent choice and determination to escape.

### ISSUE IV

Defendant next argues that the court erred in denying his motion for severance of charges for trial. He made his motion prior

to trial and renewed it just prior to the testimony of Mary Ann Yockey. He argues that "Counts I, II, and III were clearly related to John E. Henderson and Counts IV and V were clearly related to Mary Ann Yockey."

Ind.Code § 35–3.1–1–9(a)(2) provides that two or more offenses may be joined in the same information, with each offense stated in a separate count, when the offenses "[a]re based on the same conduct or on a series of acts connected together or constituting parts of a single scheme or plan." Ind.Code § 35–3.1–1–11(a) gives a defendant an absolute right to separate trials, only if the charges are joined solely on the ground that they are of the same or similar character. In all other cases severance is granted "whenever the court determines that severance is appropriate to promote a fair determination of the defendant's guilt or innocence of each offense . . . ."

■ Whether charges are severed for trial generally lies within the trial court's sound discretion, and clear error must be demonstrated for this Court to interfere. *Duncan v. State*, (1980) Ind., 409 N.E.2d 597, 599. In making its decision, the court is to take into account "the number of offenses charged, the complexity of the evidence to be offered, and whether the trier of fact will be able to distinguish the evidence and apply the law intelligently as to each offense." Ind.Code § 35–3.1–1–11(a); *Jameison v. State*, (1978) 268 Ind. 599, 601, 377 N.E.2d 404, 405.

■ In the case at bar, the charges were not joined by reason of their being of the same or similar character. Rather, they arose from a single ongoing scheme and from a series of acts that constituted the parts of the scheme. The charges of escape, kidnapping, armed robbery, and theft all arose as a consequence of the Defendant's ongoing plan to escape on September 25, 1979.

It cannot be said that the evidence in this case was complex or that a fair determination of Defendant's guilt or innocence was hindered when he was tried on all five charges in one trial.

## ISSUE V

■ On the date of the sentencing hearing, the Defendant moved for a continuance based upon the presentence report's having been delivered to counsel for the Defendant but one day prior to sentencing. The denial of that motion is assigned as error.

Ind.Code § 35–4.1–4–13 (Burns 1979) provides that the court shall furnish the convicted person or his counsel with the factual contents of the presentence report sufficiently in advance of sentencing so that the convicted person "will be afforded a fair opportunity to controvert the material contained therein." In *Gardner v. State*, (1979) 270 Ind. 627, 634, 388 N.E.2d 513, 518, this Court noted that it is the defendant's responsibility to bring to the trial court's attention any disputed facts regarding sentencing criteria. In the case at bar, the Defendant made no mention as to which findings, if any, in the presentence report he wished to controvert. The Defendant received the report in advance of the sentencing hearing; he stated at the hearing that he had no evidence to present; he failed to enumerate specific findings which he planned to controvert if given additional time, and finally, he has failed to show how he was harmed. "The denial of a motion grounded upon sheer speculation that some benefit might flow from it cannot be said to be arbitrary or abusive." *Brewer v. State*, (1981) Ind., 417 N.E.2d 889, 906, *cert. den.* 458 U.S. 1122, 102 S.Ct. 3510, 73 L.Ed.2d 1384 (1982).

## ISSUE VI

■ Defendant was sentenced to a total of 132 years imprisonment, and he now argues that such sentence constituted vindictive justice and cruel and unusual punishment, not proportioned to the nature of the offense, in violation of the Indiana Constitution and the United States Constitution.

His argument is without merit. We have held that so long as the sentence imposed is

authorized by statute, is not manifestly unreasonable, and the trial court's findings of aggravating and/or mitigating circumstances are disclosed in the record, we will not revise or strike down the sentence. *Abercrombie v. State,* (1982) Ind., 441 N.E.2d 442 (on appeal after remand); *Bish v. State,* (1981) Ind., 421 N.E.2d 608, 621, *reh. denied.*

In the case at bar, the sentence given for each offense was within the confines authorized by Ind.Code §§ 35–50–2–4 (class A felonies), 35–50–2–5 (class B felonies), and 35–50–2–7 (class D felonies). The court, in compliance with Ind.Code § 35–4.1–4–7, set forth several aggravating circumstances to justify the enhancement of each sentence to its maximum, including the Defendant's long history of criminal behavior, which included convictions for attempted breaking and entering, two convictions for entering to commit a felony, two convictions for armed robbery, kidnapping, and criminal sexual conduct. Other aggravating factors were that one of the victims in the instant case was a female high school student under the age of "majority" and that another victim was a police officer. The court further noted that the Defendant's history indicated a "need of structured correctional treatment that can only be provided in the secure setting of penal facilities."

Further, a sentence is not manifestly unreasonable "unless no reasonable person could find such sentence appropriate to the particular offense and offender for which such sentence was imposed." Ind.R.App. Rev.Sen. 2(2). Inasmuch as the sentences imposed are authorized by statute, are not manifestly unreasonable, and are supported by the court's listing of aggravating circumstances, we find no error.

We find no reversible error. The judgment of the trial court is affirmed.

GIVAN, C.J., and DeBRULER, HUNTER and PIVARNIK, JJ., concur.