**Pamela Jo ABNER, Appellant (Defendant Below),**

v.

**STATE of Indiana, Appellee (Plaintiff Below).**

**No. 383 S 86.**

Supreme Court of Indiana.

June 25, 1985.

Andrew H. Wright, Salem, for appellant.

Linley E. Pearson, Atty. Gen., Robert K. Johnson, Deputy Atty. Gen., Indianapolis, for appellee.

PRENTICE, Justice.

Following a trial by jury, Defendant (Appellant) was convicted of conspiracy to commit murder, a class A felony, Ind.Code §§ 35–41–5–2 and 35–42–1–1 (Burns 1979) and of aiding reckless homicide, a class C felony, Ind.Code §§ 35–41–2–4 and 35–42–1–5 (Burns 1979). She was sentenced to concurrent terms of imprisonment of thirty (30) years (ten of which were suspended) upon the conspiracy conviction and five (5) years upon the aiding reckless homicide conviction. Her direct appeal presents eight (8) issues for our review, as follows:

(1) Whether the evidence was sufficient to sustain the conviction for conspiracy to commit murder;

(2) Whether the evidence was sufficient to sustain the conviction for aiding reckless homicide;

(3) Whether the Defendant had immunity from conviction;

(4) Whether the trial court erred in admitting into evidence an incriminating statement made by the Defendant;

(5) Whether the trial court erred in denying Defendant's motion for severance of the charges;

(6) Whether the trial court erred in admitting into evidence the deposition of Rick Shelton, a prosecution witness;

(7) Whether the trial court erred in refusing to give two (2) instructions tendered by the Defendant;

(8) Whether the trial court should have granted a new trial because of newly discovered evidence.

The record discloses that on July 26, 1980, Charles Abner, Sr. and his daughter Margaret Rouse were fishing in Washington County, Indiana, when Rick Shelton, Margaret's cousin and Charles' nephew, arrived and asked to join them. Subsequently, Rick pushed Abner into the water and then shot him in the head with a .22 caliber rifle. Charles' body was recovered four days later. The cause of death was a single gunshot wound to the head. Margaret originally told police that a stranger had argued with her father and had shot him. Ultimately, however, Margaret and the Defendant told police that Rick Shelton had killed their father. Rick pled guilty to murder and agreed to testify at the trials of others involved in the crime. In a statement which Rick gave to police he revealed that Martha Abner, the victim's wife and his aunt, had asked him to kill Charles by pushing him into the river so that he would drown and had agreed to pay him $2,000 for the job. The Defendant was present during this discussion and price negotiation as well as on other occasions when the murder was discussed. Subsequently, Margaret helped Rick locate the area where the murder would take place. The plan required Margaret to ask her father to go fishing and the Defendant to call Rick when the two left the house so that he could meet them at the previously chosen site and carry out the plan. Rick's statement disclosed that he received a telephone call from the Defendant on the morning of July 26, 1980, and that she told him that Margaret and her father had left to go fishing. She further told him to wait half an hour and then to leave.

Rick met Margaret and Charles, and they fished together for a while. Rick then pushed Charles into the water, became scared, shot him and left the scene. Later he called the Defendant and told her that he had shot her father and that she should get some money for him, because he was planning to leave. She, however, told him to stay where he was. She then picked him up in her automobile, drove him to a friend's house and told him to remain calm and not to leave. Later, after Rick had been questioned, the Defendant and Margaret told him not to change his story. Rick received periodic payments for his part in the plan, some of which were delivered to him by the Defendant. After a lengthy investigation, the Defendant was arrested on September 4, 1981.

## ISSUES I & II

■ We review the Defendant's challenges to the sufficiency of the evidence pursuant to the following standard:

"Upon a review for sufficient evidence, this Court will look only to the evidence most favorable to the State and all reasonable inferences to be drawn therefrom. If the existence of each element of the crime charged may be found therefrom, beyond a reasonable doubt, the verdict will not be disturbed. In such a review, we will not weigh conflicting evidence nor will we judge the credibility of the witnesses." (citations omitted).

*Loyd v. State* (1980), 272 Ind. 404, 407, 398 N.E.2d 1260, 1264, *cert. denied,* 449 U.S. 881, 101 S.Ct. 231, 66 L.Ed.2d 105. Defendant was convicted of conspiracy to commit murder. The conspiracy statute, Ind.Code § 35–41–5–2 (Burns 1979) provides, in pertinent part:

"(a) A person conspires to commit a felony when, with intent to commit the felony, he agrees with another person to commit the felony. A conspiracy to commit a felony is a felony of the same class as the underlying felony. However, a conspiracy to commit murder is a class A felony."

Defendant argues that the evidence is insufficient to prove that she *agreed* with the co-conspirators to murder her father.

Rather, she argues, the evidence shows only that she "was aware that her mother had solicited Ricky Shelton to kill her father."

In *Reese v. State* (1983), Ind., 452 N.E.2d 936, 941, we stated:

"The law does not require a formal agreement; the existence of the agreement may be inferred from the conduct of the parties or proved by circumstantial evidence. *Woods v. State*, (1980) 274 Ind. 624, 413 N.E.2d 572, 573; *Patterson v. State*, (1979) 270 Ind. 469, 478, 386 N.E.2d 936, 942, *cert. denied* (1979) 444 U.S. 935, 100 S.Ct. 283, 62 L.Ed.2d 194. The intent may be inferred from the acts committed and the circumstances surrounding the case. *Young v. State*, (1971) 257 Ind. 173, 177, 273 N.E.2d 285, 287. A conviction for conspiracy may be based solely upon circumstantial evidence. *Patterson, supra* [270 Ind]. at 942 [386 N.E.2d 936]."

From the circumstances of this case, as hereinbefore related, the jury could reasonably infer that the Defendant agreed to a plan to kill her father. The evidence is sufficient to sustain the verdict of guilty. *See Williams v. State* (1980), 274 Ind. 578, 581–582, 412 N.E.2d 1211, 1214.

Defendant also argues that the evidence was not sufficient to sustain the conviction of aiding reckless homicide. Essentially she argues that the testimony that she called Rick Shelton on the morning of the crime to set the plan in motion is "inherently improbable." We do not judge the credibility of the witness. Rick testified that the Defendant called him that morning and that he then went to the chosen site where he killed Charles Abner. Without that telephone call he would not have known whether Margaret and the victim had gone fishing so that he could carry out the plan. The evidence is sufficient to support the conviction of aiding reckless homicide.

## ISSUE III

On August 17, 1981, Stephen D. Doboze, the prosecuting attorney for Jackson County, prepared a document entitled "Grant of Immunity" which both he and the Defendant signed and by which the Defendant agreed "to co-operate with the Indiana State Police in the investigation of the murder." She was "expected to give statements, sign those statements once they [were] reduced to writing and to testify about these cases in court against her co-conspirators or against the person(s) involved in the murder of Charles Abner." In exchange for this, Doboze gave the Defendant "immunity from prosecution on a case involving any conspiracy to commit murder." The document further stated that the immunity did not apply "as against the principal charge of murder of one Charles Abner."

Following her arrest, Defendant filed a motion to dismiss the charges pursuant to Ind.Code § 35–3.1–1–4(a)(4) (Burns 1979) [repealed effective September 1, 1982; for provision effective September 1, 1982 see Ind.Code § 35–34–1–4(a)(6) ] upon the basis that she had been granted immunity. Following a hearing on the motion, it was denied. On appeal, Defendant argues that she was granted transactional immunity, that the agreement should be enforced "in order to protect the credibility and integrity of the Criminal Justice System and all its component parts," and that the State, having benefitted from her statements, is now estopped from denying the validity of the agreement.

This Court in *In re Caito* (1984), Ind., 459 N.E.2d 1179, *cert. denied,* — U.S. ——, 105 S.Ct. 62, 83 L.Ed.2d 13, *reh. den.,* — U.S. ——, 105 S.Ct. 554, 83 L.Ed.2d 440, defined the types of immunity which may be granted as follows:

"(1) *transactional immunity:* which prohibits the state from criminally prosecuting the witness for any transaction concerning that to which the witness testifies; (2) *use immunity:* where the testimony compelled of the witness may not be used at a subsequent criminal proceeding; and (3) *derivative use immunity:* whereby any evidence obtained as a result of the witness' compelled testi-

mony may not be admitted against him in a subsequent criminal prosecution." (citation omitted).

*Id.* at 1182–1183. Our Court of Appeals has determined that the immunity statute in effect at the time of this agreement, Ind.Code § 35–6–3–1 (Burns 1979) [repealed effective September 1, 1982; for provisions effective September 1, 1982 see Ind.Code §§ 35–34–2–8 and 35–37–3–1—35–37–3–3], permits only the granting of use immunity. *In re Contempt Findings Against Schultz* (1981), Ind.App., 428 N.E.2d 1284, 1287–1288 (*trans. den.*). Hence, assuming, *arguendo,* that the prosecutor did attempt to grant the Defendant transactional immunity, to do so was beyond his authority. At best, the Defendant was granted only use immunity. At worst, the agreement was void. *See Fort Wayne Patrolman's Benevolent Association, Inc. v. City of Fort Wayne* (1980), Ind.App., 408 N.E.2d 1295, 1302 (*trans. den.*).

■ We next turn to Defendant's argument that the agreement should, nonetheless, be enforced inasmuch as the State benefitted from her cooperation and was, consequently, estopped from denying that it had granted her transactional immunity. As a general rule, one may not premise an estoppel upon acts done by public officers in excess of their authority. *Department of Insurance v. Church Members Relief Association* (1940), 217 Ind. 58, 60, 26 N.E.2d 51, 52–53; *Ness v. Board of Commissioners* (1912), 178 Ind. 221, 232, 98 N.E. 33, 36; *Sandy v. Board of Commissioners* (1909), 171 Ind. 674, 677, 87 N.E. 131, 132; *Platter v. Board of Commissioners of Elkhart County* (1885), 103 Ind. 360, 381, 2 N.E. 544, 556–557; *Turner Transportation, Inc. v. Indiana Employment Security Board* (1983), Ind.App., 448 N.E.2d 300, 303; *Cablevision of Chicago v. Colby Cable Corp.* (1981), Ind.App., 417 N.E.2d 348, 354. In *Department of Insurance v. Church Members Relief Association,* this Court observed:

"When the right to do a thing depends upon legislative authority, and the Legislature has failed to authorize it, or has forbidden it, no amount of acquiescence, or consent, or approval of the doing of it by a ministerial officer, can create a right to do the thing which is unauthorized or forbidden.... An estoppel against the state cannot arise out of the unauthorized acts of state officers."

217 Ind. at 60, 26 N.E.2d at 52–53. We do not believe that the immunity agreement granted the Defendant transactional immunity, but, in any event, the prosecuting attorney had no authority to do so inasmuch as the granting of such immunity is not authorized by statute.

■ Finally, as the State points out in its brief, the Defendant is not entitled to enforcement of the agreement on equity grounds because she violated its terms. Although she agreed to cooperate with the police investigation, she withheld information and later admitted that she "wasn't telling the truth" in some of her statements.

## ISSUE IV

Following a hearing on Defendant's motion to suppress statements made on August 18, August 20, and September 4, 1981, the trial court, without stating its reasons, granted the motion with respect to the first two statements, but denied it with respect to the September 4 statement. Defendant argues that the court's failure to suppress the September 4 statement constitutes reversible error. Specifically, she argues that the statement was "the direct result of a specific promise of immunity or leniency" and was not, therefore, voluntarily given.

■ We note initially that it is incumbent upon a defendant to object to the introduction of the challenged evidence at trial and to specify the grounds upon which the objection is premised. Here, the Defendant objected to the admission of the statement "for reasons that we previously argued in chambers." Such objection is insufficient to preserve error. Nonetheless, we find that Defendant's argument is without merit.

In *Hendricks v. State* (1978), 267 Ind. 496, 371 N.E.2d 1312, *cert. denied,* 436 U.S. 961, 98 S.Ct. 3079, 57 L.Ed.2d 1127, we set forth the applicable standards for review:

"In order for a confession to be admitted, whenever a question arises as to its voluntariness, the issue is controlled by the constitutional standard of voluntariness alike in both state and federal prosecutions. *Malloy v. Hogan,* (1964) 378 U.S. 1, 84 S.Ct. 1489, 12 L.Ed.2d 653. To be voluntary a confession 'must not be extracted by any sort of threats or violence, nor be obtained by any direct or implied promises, however slight, nor by the exertion of any improper influence.' *Shotwell Manufacturing Co. v. U.S.,* (1963) 371 U.S. 341, 83 S.Ct. 448, 9 L.Ed.2d 357 quoting *Bram v. U.S.,* (1897) 168 U.S. 532, 18 S.Ct. 183, 42 L.Ed. 568; *Ashby v. State,* (1976) [265 Ind. 316], 354 N.E.2d 192.

"A prior involuntary statement may render a second or subsequent statement inadmissible:

'Of course, after an accused has once let the cat out of the bag by confessing, no matter what the inducement, he is never thereafter free of the psychological and practical disadvantages of having confessed.'

*U.S. v. Bayer,* (1947) 331 U.S. 532 at 540, 67 S.Ct. 1394 at 1398, 91 L.Ed. 1654 at 1660. However, a prior involuntary confession does not render subsequent statements inadmissible *per se.*

'But this Court has never gone so far as to hold that making a confession under circumstances which preclude its use, perpetually disables the confessor from making a usable one after these conditions have been removed.'

*U.S. v. Bayer, supra,* 331 U.S. at 541, 67 S.Ct. at 1398, 91 L.Ed. at 1660. Neither does the mere advisement of *Miranda* rights necessarily purge the taint of circumstances surrounding the previous confession. *Brown v. Illinois,* (1975) 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416.

"In order for a subsequent confession to be admissible there must be a break in the chain of events sufficient to insulate the statement from that which went before. *Clewis v. Texas,* (1967) 386 U.S. 707, 87 S.Ct 1338, 18 L.Ed.2d 423; *Leyra v. Denno,* (1954) 347 U.S. 556, 74 S.Ct. 716, 98 L.Ed. 948. The totality of the circumstances should be reviewed in determining the admissibility of a subsequent statement, but the U.S. Supreme Court has suggested three primary factors for scrutiny: (1) the temporal proximity of the illegality and the confession; (2) the presence of intervening circumstances; and (3) the flagrancy of the official misconduct. *Brown v. Illinois, supra.*"

*Id.* 267 Ind. at 499–500, 371 N.E.2d at 1313–1314.

Although conceding that the trial court's suppression of the statements of August 18 and August 20 does not necessarily render the statement of September 4 inadmissible, the Defendant argues that there was no break in the chain of events from the prior confessions sufficient to insulate the confession of September 4 from the prior statements.

The facts surrounding the taking of the statements as disclosed in the hearing on the motion to suppress and at trial are these: On August 18, 1981, the Defendant signed an immunity agreement (see Issue III) and gave a statement to the police. On August 20, she and her sister Margaret gave an additional statement. Before giving this statement, the Defendant asked Officer Demlow if the immunity agreement was still in effect. He told her that he did not know and would have to check with Prosecutor Doboze. He stated that he told her that, without checking with Doboze, he would have to say "it was not still in effect." He then offered to contact Doboze. The Defendant, however, said that that was not necessary, left with her sister for about fifteen to twenty minutes, and then returned to the police station where she gave her statement, after being advised of her rights and signing a waiver form. Both she and Margaret told police that Rick Shelton had killed Charles Abner.

Rick was then arrested and on August 31 and September 1, he confessed to the murder of Charles Abner. Thereafter, the Defendant was charged with conspiracy to commit murder and was arrested at approximately 7:30 a.m. on September 4, 1981. She was transported to the Washington County Jail where police gave her the *Miranda* advisements and she signed a waiver of rights form. She gave the challenged incriminating statement at 9:42 a.m. The immunity agreement was never discussed on September 4, 1981.

Applying the standards set forth in *Hendricks,* we find that there was a break in the chain of events sufficient to insulate the September 4 statement from the two prior statements. First, she had reason to know that the immunity agreement was not in effect on September 4. In addition, fifteen (15) days had transpired between the date of her prior statement, which was suppressed, and the challenged statement. Upon being arrested, she was advised of the charges against her and was fully advised of her rights. She also signed a waiver of rights form. In the interim between August 20 and September 4, several events occurred. Her mother, Martha Abner, was arrested in connection with the crime, and Rick Shelton was arrested and confessed. Moreover, we do not find any official misconduct. Under these circumstances we find that the trial court had sufficient evidence upon which to conclude that the Defendant's statement of September 4, 1981 was voluntary. *See Holleman v. Duckworth* (7th Cir.1983), 700 F.2d 391, 396–397, *cert. denied,* —— U.S. ——, 104 S.Ct. 116, 78 L.Ed.2d 116; *Holleman v. State* (1980), 272 Ind. 534, 538–539, 400 N.E.2d 123, 126; *Gutierrez v. State* (1979), 271 Ind. 639, 646–647, 395 N.E.2d 218, 223–224.

## ISSUE V

Defendant assigns as reversible error the trial court's denial of her motion for severance of the charges for trial. Ind.Code § 35–3.1–1–11(a) [now § 35–34–1–11] gives a defendant an absolute right to separate trials only if the charges are joined solely on the ground that they are of the same or similar character. In all other cases severance is granted "whenever the court determines that severance is appropriate to promote a fair determination of the defendant's guilt or innocence of each offense..."

Whether charges are severed for trial generally lies within the trial court's sound discretion, and clear error must be demonstrated for this Court to interfere. *Eubank v. State* (1983), Ind., 456 N.E.2d 1012, 1017; *Grimes v. State* (1983), Ind., 454 N.E.2d 388, 390. In making its decision, the court is to take into account "the number of offenses charged, the complexity of the evidence offered, and whether the trier of fact will be able to distinguish the evidence and apply the law intelligently as to each offense." Ind.Code § 35–3.1–1–11(a); *Eubank v. State,* 456 N.E.2d at 1017; *Grimes v. State,* 454 N.E.2d at 390; *Jameison v. State* (1978), 268 Ind. 599, 601, 377 N.E.2d 404, 405.

In the case at bar, the charges were not joined by reason of their being of the same or similar character. Rather, the charges arose from the single ongoing scheme to murder Charles Abner. We do not agree with Defendant that the evidence in this case was complex or that a fair determination of her guilt or innocence was hindered when she was tried on both charges in one trial.

## ISSUE VI

On September 13, 1981, Rick Shelton pled guilty to the murder of Charles Abner and agreed, in exchange for a sentence of thirty-five (35) years, to be a witness in other pending causes arising from that crime. On September 17, 1981, the attorney for Martha Abner, Defendant's mother, who had also been charged in connection with the crime, took Rick Shelton's deposition. Defendant's attorney was present at the taking of the deposition and questioned Shelton. At Defendant's trial, Shelton was called as a prosecution witness; however, he refused to answer ques-

tions about his direct involvement in the death of Charles Abner. The State then moved to have Shelton declared a hostile witness and to admit into evidence the deposition of September 17, 1981. Both motions were granted. The trial court also found Shelton to be in contempt of court for refusing to answer questions.

Defendant argues that the deposition should not have been admitted. She contends that her right of confrontation was violated because (1) the deposition was taken for discovery purposes and her attorney did not conduct an adequate cross-examination of Shelton and (2) she was not present at the taking of the deposition.

There is no merit to Defendant's first contention. While the stated purpose of the deposition was "for discovery," Defendant's attorney did conduct a vigorous and lengthy examination. The deposition consists of 124 typewritten pages; forty (40) of those pages constitute defense counsel's examination of Shelton.

Neither is there merit to Defendant's second contention. Ind.Code § 35–1–31–8 [repealed effective September 1, 1982; for provisions effective September 1, 1982 see Ind.Code § 35–37–4–3] provided that when defense counsel takes a deposition on behalf of the defendant, any objection based on confrontation is waived if the State subsequently seeks to admit the deposition at trial. *Roberts v. State* (1978), 268 Ind. 348, 354–355, 375 N.E.2d 215, 220. In *Gallagher v. State* (1984), Ind.App., 466 N.E.2d 1382, 1386, our Court of Appeals determined that even though Ind.Code § 35–1–31–8 has been repealed, the holding of *Roberts* is still controlling and that one may waive his right to object on confrontation grounds. *Id.* at 1386. In *Roberts*, the deposition at issue was taken on behalf of the appellant by his attorney in the prosecution of a separate charge of theft and was used against the appellant during his trial for murder. *Roberts v. State*, 268 Ind. at 355, 375 N.E.2d at 220. In *Gallagher*, defense counsel took the deposition of an accomplice in the presence of the State, but outside the presence of the appellant.

The Court of Appeals held that appellant's right to object to the introduction of the deposition on confrontation grounds was waived. *Gallagher v. State*, 466 N.E.2d at 1386.

In the case at bar, although Shelton's deposition was apparently requested by Martha Abner's attorney, Defendant's attorney was present and actively participated. Under these circumstances, we find that Defendant has waived her right of confrontation.

Moreover, Ind.R.Tr.P. 32(A) provides for the use of depositions in court proceedings as follows:

"(3) The deposition of a witness, whether or not a party, may be used by any party for any purpose if the court finds:

(a) that the witness is dead; or

(b) that the witness is outside the state, unless it appears that the absence of the witness was procured by the party offering the deposition; or

(c) that the witness is unable to attend or testify because of age, sickness, infirmity, or imprisonment; or

(d) that the party offering the deposition has been unable to procure the attendance of the witness by subpoena; or

(e) upon application and notice, that such exceptional circumstances exist as to make it desirable, in the interest of justice and with due regard to the importance of presenting the testimony of witnesses orally in open court, to allow the deposition to be used; or

(f) upon agreement of the parties."

Defendant argues that T.R. 32(A)(3)(e) is the only criterion possibly applicable to the situation at bar and that its applicability has not been shown. Whether "exceptional circumstances" exist so as to justify admitting a deposition into evidence pursuant to T.R. 32(A)(3)(e) is properly left to the sound discretion of the trial court. Reversible error will be found only when the trial court has abused its discretion. *Cooper v. Ind. Gas and Water Co.* (1977), 173 Ind. App. 47, 49, 362 N.E.2d 191, 193; *Gates v.*

*Rosenogle* (1983), Ind.App. 452 N.E.2d 467, 472. Here, the State did all that it could possibly do in order to present Shelton's testimony at trial. He was called as a prosecution witness, and he was questioned about his involvement in the Abner murder. Shelton, however, refused to answer any questions about his direct involvement in the case. He was declared to be a hostile witness, and, ultimately, was found to be in contempt of court. Yet he still refused to answer questions. Under these circumstances, we find no abuse of discretion in the ruling of the trial court.

### ISSUE VII

We do not address Defendant's contentions regarding the trial court's refusal to give two of her tendered instructions. The instructions are not included in the record. Neither does the record disclose that the instructions were tendered or refused. All that the record discloses is this statement by the trial court, "We have been reaching an agreement on Final Instructions. We have the Final Instructions ready and they will be given to you after lunch." If error in fact occurred, Defendant has failed to preserve it.

### ISSUE VIII

Filed with Defendant's motion to correct errors, which alleged that newly discovered evidence had been obtained which had not been available at the time of trial, were certified copies of affidavits attesting that Margaret Rouse had said that she, not Rick Shelton, had killed Charles Abner. Affidavits by V.M. and Martha Abner, cell mates of Margaret Rouse and the Defendant at the Floyd County Jail, recited that they had heard Margaret say that she had killed Abner and that she would not let her mother and her sister spend another night in jail for something they didn't do. Affidavits by two jail employees disclosed that they had heard Margaret say something to the effect that she would not let them spend another day in jail for something they didn't do. Defendant argues that if those statements had been made at Defendant's trial, "it is very probable that the verdicts

would have been different." The State counters, "Such self-serving jailhouse banter, resting on hearsay, is clearly suspect. It is especially significant that it is uncorroborated by a statement from the declarant. It was clearly within the trial court's discretion to discount the 'evidence' and reject the claim."

■ In order for a defendant to prevail upon the basis of newly discovered evidence, he must establish (1) that the evidence has been discovered since the trial; (2) that it is material and relevant; (3) that it is not cumulative; (4) that it is not merely impeaching; (5) that it is not privileged or incompetent; (6) that due diligence was used to discover it in time for trial; (7) that the evidence is worthy of credit; (8) that it can be produced upon a retrial of the case; and (9) that it will probably produce a different result. *Johnson v. State* (1984), Ind., 464 N.E.2d 1309, 1311; *Cox v. State* (1981), Ind., 419 N.E.2d 1279, 1285.

■ Here the testimony is merely impeaching and, as the State points out, not particularly creditworthy. Moreover, we find that it is unlikely that such evidence would produce a different result on retrial. The trial court did not err in refusing to grant a new trial. *See Smith v. State* (1982), Ind., 429 N.E.2d 956, 958.

We find no reversible error. The judgment of the trial court is affirmed.

GIVAN, C.J., and DeBRULER and PIVARNIK, JJ., concur.

HUNTER, J., not participating.